[Sac. No. 1254.   Department Two.—February 9, 1906.]

## H. T. RENTON, Respondent, v. W. E. GIBSON et al., Appellants.

DEED—MORTGAGE—TRUST—INSUFFICIENCY OF EVIDENCE.—In order to establish that a deed absolute upon its face was intended as a security, either by way of mortgage or by way of a trust-deed, the evidence must be clear and convincing; and where a finding that defendant took title to the property by way of security for the repayment of money expended in an action brought by him to clear the title is opposed to the great weight of the evidence, and to the very declarations of the complaint, and to plaintiff's own evidence in support of it, the finding cannot be sustained.

ID.—CONSTRUCTION OF COMPLAINT—PRESUMPTION OF TITLE.—Where the complaint avers that plaintiff had title up to a certain day, on which the deed was executed, the presumption arises that he then parted with the title; and this presumption is aided by the direct averment that the deed was made to enable the defendant to sue in his own name to quiet title to the property, which could not lawfully have been done if the title had not passed.

ID.—AGREEMENT FOR HALF INTEREST—DECLARATION OF TRUST.—Where the evidence for the defendant presents a rational and understandable explanation of the transaction, and shows that the title to the property had been in dispute for years; that plaintiff had no money with which to prosecute an action to clear the title, and that the agreement was that defendant should take the title and advance the money to clear the title for a half interest in the property, and that defendant gave plaintiff a written and signed agreement to convey to him a half interest upon request, this, treated as a declaration of trust, signed by the trustee, constitutes the measure of plaintiff's right.

ID.—CONTRACT TO SELL PLAINTIFF'S INTEREST—ERRONEOUS JUDGMENT—REFORMATION WITHOUT PLEADINGS — NON-PERFORMANCE. — Where plaintiff contracted with another defendant to sell and convey all of his interest in the property in controversy, it was error to reform the contract without pleading into an agreement to sell and convey an undivided half interest therein, and to foreclose all of defendant's rights under a time limit, where it appears that plaintiff had not performed the contract, and that the defendant is not in default, but stands ready and willing to perform it upon performance by plaintiff. Such defendant should have been given a judgment for costs.

APPEAL from a judgment of the Superior Court of Placer County and from an order denying a new trial.  J. E. Prewett, Judge.

The facts are stated in the opinion of the court.

Thomas C. Huxley, for Appellants.

W. H. Slade, for Respondent.

HENSHAW, J.—Plaintiff brought his action against defendants as claiming an interest in real estate adverse to him. Against defendant Gibson the complaint averred "that up to the 29th day of June, 1901," plaintiff had been the owner of the land in question; that on or about that date, by an instrument in writing, he conveyed and quitclaimed the property to defendant Gibson; that the conveyance was made to Gibson and accepted by him as security for the repayment of "certain moneys advanced, and to be advanced, by said Gibson in clearing the title to said real property and not otherwise, and it was stipulated and agreed to by and between said plaintiff and said defendant Gibson that he, said defendant Gibson, would reconvey to this plaintiff the said property upon payment to him, said Gibson, of the money so advanced as aforesaid in clearing the title to said land and property, together with interest thereon at the rate of eight per cent per annum." It is further alleged that in accordance with this agreement defendant Gibson successfully prosecuted to judgment an action in the superior court whereby title to the land in question was quieted in favor of Gibson; that thereafter plaintiff tendered Gibson the amount claimed to have been expended by him,—namely, the sum of $135,—and demanded a reconveyance, which reconveyance he refuses to execute. Defendant Ingram was brought in under an allegation that he "claimed to have some interest in the land adverse to the plaintiff." Defendant Gibson answered by denial, but affirmatively alleged his willingness to convey an undivided one half of the property in question to plaintiff. Defendant Ingram by his answer set up that upon the fourteenth day of April, 1902, the plaintiff claiming to be the owner of an equal undivided one half of all of the land, executed and delivered to the defendant an agreement in writing, wherein and whereby, in consideration of the payment of a certain sum of money and certain shares of the capital stock of a corporation, he agreed to vest in the defendant Ingram and authorize

the defendant Gibson to transfer and convey unto defendant Ingram all of the right, title, and interest of plaintiff in and to the tracts of land in controversy. He further averred that the agreement had never been performed by or on the part of the plaintiff; it had never been canceled or annulled, but at the commencement of the action was in full force and effect, and that ever since the making of the agreement he (Ingram) has stood and still stands ready, able, and willing to perform the same upon performance by or on behalf of the plaintiff, Renton.

The court, as to defendant Gibson, found in accordance with the allegations of the complaint declaring specifically that "on or about the 26th day of June, 1901, said plaintiff, by an instrument in writing, purporting to be a conveyance to W. E. Gibson of said property in question, as security for money advanced by defendant Gibson to plaintiff," etc. It further found "that there was an agreement between said plaintiff and defendant W. E. Gibson, whereby said Gibson was to commence and prosecute a certain suit to quiet title to said land and premises; that said Gibson was to advance the money necessary to prosecute said action to quiet title thereto; and that said defendant Gibson was to hold said land as security for any and all expense that he necessarily incurred in the said action to quiet title to said land." Further, "that the said conveyance was made to defendant Gibson, and accepted by him as security for the repayment to him of money advanced and to be advanced by said Gibson in clearing the title to said property, and not otherwise"; that Gibson in furtherance of this agreement had advanced the sum of $135, and that there was due him the sum of $135, with interest at the rate of eight per cent; that plaintiff had tendered that amount, and that that amount was now in the hands of the clerk of the court as a tender; and that defendant Gibson refused to accept it. The conclusion of law following this was that plaintiff was entitled on the payment of $135 to defendant Gibson to have his title to the land quieted and to a decree that defendant Gibson reconvey to plaintiff the premises, and upon his failure so to do that a conveyance be made by a commissioner. The judgment against Gibson was in conformity with this. The findings touching the defendant Ingram will be adverted to hereafter.

It is not easy to understand the meaning of the court's findings when they are considered in the light of the evidence in the case. This difficulty, however, is not unnatural in contemplation of the circumstance that plaintiff's attorney seems to have been himself extremely uncertain as to the legal character of the transaction which the parties had entered into, in one complaint pleading that plaintiff had conveyed the title to the property to the defendant Gibson "in trust," and in a subsequent complaint striking out this averment, and pleading, as above set forth, that the conveyance was made as "security." If the finding of the court, following in this regard as it does the allegation of the complaint, is to be taken as a declaration that the deed from plaintiff to defendant was security in the sense that it was a mortgage merely, then this finding is not only not clearly and convincingly supported by the evidence, as all the authorities require shall be done before a written instrument of such dignity as a deed shall be proved other than what on its face it purports to be (*Sheehan* v. *Sullivan*, 126 Cal. 193, [58 Pac. 543]), but it is opposed to the great weight of the evidence and to the very declarations of the complaint itself. The complaint pleads that plaintiff had title "up to" a certain day, from which the presumption arises that after that date he parted with title. This presumption is aided by the direct averment that plaintiff made a deed to defendant at that time and that this deed was made for the purpose of enabling defendant to commence and prosecute in his (defendant's) name an action to quiet title to the property. Whatever be the form of an instrument other than a deed of trust, it is of course well settled that if it be intended as security merely it is a mortgage, title does not pass, and only a lien results in favor of the named grantee, who in law is but the mortgagee. Section 2924 of the Civil Code contains this express declaration in language admitting of no misunderstanding when it says: "Every transfer of an interest in property, other than in trust, made only as security for the performance of another act, is to be deemed a mortgage," and a mortgage is "a contract by which specific property is hypothecated for the performance of an act, without the necessity of a change of possession." (Civ. Code, sec. 2920.) But here, by the very terms of the complaint, the

allegations of which are supported by plaintiff's own evidence, there was something more contemplated by the deed than the mere hypothecation of the property as security for moneys to be advanced. It was the understanding of all the parties that defendant Gibson was to take title by this conveyance, as otherwise all of the parties would have been guilty of a fraud upon the court in beginning and prosecuting an action to quiet title when all knew, understood, and agreed that the deed under which plaintiff claimed was not, and was never intended to be anything more than a mortgage.

Moreover, the case is not left without positive evidence upon this point. For while plaintiff testifies that Gibson was to advance the money simply to clear up the title to the property, and was to be repaid with eight per cent interest, and was to have no estate in the property, but was to hold it as security merely for the repayment of the money, he further says, in the course of his somewhat cloudy explanation of the matter, that Gibson would not go ahead with the proposition at all unless he got the quitclaim deed, insisted upon that before commencing suit, and that it was further agreed that after quieting title to the property Gibson should proceed to develop it, paying to plaintiff one half of the proceeds. It is true, too, that Mr. White, who was a witness for plaintiff, and who was the attorney for Gibson in the suit to quiet title, testifies that his understanding of the transaction between plaintiff and Gibson was that Gibson had no title or interest in the property except by way of security, yet when catechised as to how he found it in his conscience to come before a court and foreclose title upon an instrument which was but a mortgage and conveyed no title, he shuffles and evades, saying: "The complaint was fair upon its face. I don't know that I am called upon to pass an opinion on that point. I say that it was fair upon its face." When further asked how he could undertake to vest a defendant with a good title upon the strength of a mortgage, his only answer is that he "was acting for Mr. Renton in this proceeding." But as against this evidence is that of his own written agreement with defendant Gibson to the effect that he would return to Gibson the money paid him by Gibson for attorney's fees and costs if he did not successfully prosecute Gibson's suit to quiet title and obtain a decree quieting

title to the land in favor of Gibson. And still more significant is the fact that, while the deed when recorded and as recorded shows an absolute conveyance to Gibson, after recordation and after suit to quiet title had been successfully terminated, when the deed was returned by White to Gibson it contained a written interlineation to the effect that "This deed is given as security for money advanced, and is intended as a mortgage only." We say, therefore, that the complaint itself, taken with the plaintiff's evidence in support of it, establishes that the instrument was something more than a mere mortgage, and that it did convey, and must of necessity have conveyed, the legal title to the property to defendant Gibson, for the purposes contemplated—the commencement and prosecution by Gibson of a suit to quiet title to the land in question, and the procuring a decree of the court to that effect. So far as these purposes were concerned the transfer could not have been a mortgage. It is only those transfers made as security for the performance of an act (other than transfers in trust) which are mortgages (Civ. Code, sec. 2924), and as it was contemplated between parties that an act should be done by defendant in relation to the real property, which act could not lawfully have been performed by him if he were not the holder and owner of the legal title, it must follow that the conveyance was what it purported to be on its face, a deed either absolute or in trust for the indicated purposes.

So much is clear as to this phase of the transaction. We next come to consider the situation of the parties at the time of the commencement of this action, where defendant is claiming title under a deed absolute in form, and plaintiff is seeking to show that the conveyance, though absolute in form, was but a mortgage security for advances which defendant had made to him. The finding, it will be noticed, declares that defendant took the property as security for the repayment of this money, and not otherwise. "Security" is a word of broad import. Certain trust-deeds in real estate are recognized by our decisions, by which trust-deeds the legal title passes to the trustee, with power of sale. In all respects these deeds and transfers of title are "security," but they are not mortgages. A mortgage by which no title whatsoever passes, and whereby but a lien upon the property is acquired, is likewise "security." We are left in doubt

which form of security was intended by this finding. But one thing is certain that in both cases, even conceding (without, of course, so deciding) that in the case of a trust of this nature in real property such trust may be proved by parol, the rule still obtains that to overcome the legal effect of a written instrument purporting to convey land absolutely, the parol testimony, showing that the instrument was other than what it purports to be, and was merely security by way of mortgage or by way of trust-deed, must be clear and satisfying. In this case the evidence is not only not clear and convincing, but strongly preponderates against the finding. We have already shown of what plaintiff's evidence consisted, how inconclusive and unsatisfactory it inherently is, and that there seemed no reason why defendant should take title in himself, employ an attorney, expend money, and undertake the labor of quieting the title to the property when his sole return in the event of success was to be repayment of the amount expended with eight per cent interest. Defendant's own testimony, however, presents a rational and understandable explanation of the transaction. The title to the property had been for some years in dispute. Nothing had been done with it, and plaintiff had no money with which to clear title or do anything. In this condition he agreed to take the title himself and to expend the necessary money in clearing the title for a one-half undivided interest in the land, with the further understanding, not as plaintiff vaguely testifies, that he should have an option to develop and pay plaintiff one half of the proceeds, but that after clearing title defendant would advance money and do development work upon the property, which was mining property, plaintiff to become liable for one half of the expenditures and to become entitled to one half of the profits. Such is defendant's explanation, and this explanation is not only fully corroborated by Mr. Du Brutz, an attorney at law, who was present at the conferences and advised the defendant Gibson in the transaction, who testifies positively that upon his advice the deed was made as an absolute conveyance, and that for his services and risks defendant Gibson was to have an undivided one-half interest in the property, but it is further corroborated by the circumstances, as testified to by the defendant Gibson. that when plaintiff complained that he had nothing

to show that he had any interest in the property, Gibson gave him a written declaration that he stood ready to deed to plaintiff an undivided half interest at his request, which paper, if plaintiff did not legally accept, he at least took into his possession and carried away with him. Still further corroboration is found in the testimony of defendant Ingram, that plaintiff always represented to him that he owned an undivided one-half interest in the property, and that this was the explanation of the fact that plaintiff's contract to sell to him (Ingram) was a contract to sell "all of his right, title, and interest" in and to the property in controversy; that the contract was so drawn because plaintiff had explained that all of his right, title, and interest was an undivided one-half interest.

Summing up on this proposition, therefore, these conclusions follow: 1. That if, as between plaintiff and defendant Gibson, it is undertaken to show that the deed was a mortgage merely, the evidence is too vague and unsatisfactory to justify a finding to this effect. It lacks absolutely the clearness and convincingness of proof without which the terms of so solemn an instrument as a deed should not be disturbed. 2. If it be sought to treat the instrument as a deed in trust, then conceding, though not deciding, that such a trust may be proved by parol, there is, for the reasons given, a failure of satisfactory proof upon this point, and there is left nothing but the written and signed agreement by Gibson to plaintiff to convey to him a one-half interest upon request. This, treated as a declaration of trust signed by the trustee, constitutes the measure of plaintiff's right.

The court found the contract between Ingram and the plaintiff to be for an undivided one half of the land. It further found that Ingram had paid upon his contract such amount as was due and payable under it, and that the contract "still remains unperformed upon the part of defendant H. C. Ingram and this plaintiff"; that the only reason assigned by defendant Ingram for his failure to pay the balance of the unpaid purchase price was that the "United States patent therefor does not appear in the abstract of title of said property," and "that the defendant Ingram is entitled to a period of sixty days from and after the service upon him of a copy of this decree and of an amended abstract

of title from plaintiff showing a clear title to said premises, within which to pay plaintiff'' the balance of the purchase price, ''and if said defendant Ingram does not complete his purchase and pay plaintiff said money and transfer plaintiff said stock in the period of sixty days from said date defendant Ingram shall be barred of all right, title, claim and interest therein.'' The only allegation which the complaint contains affecting the defendant Ingram is the one above quoted, yet under it the court without pleadings reforms a written instrument which in terms agrees to convey all of plaintiff's interest into an agreement to convey an undivided one half of his interest. It finds that plaintiff has not performed his contract, and as to defendant, finds that certain things by him ''remain unperformed.'' Naturally, since what defendant Ingram was to perform was the payment of money and stock to complete the purchase price, those things remained unperformed until tender by plaintiff of a good and sufficient deed. Yet, where it clearly appears that defendant himself is not in default, and that he stands ready and willing to perform, an attempt by this judgment is made to fix a time limit and foreclose his right under the contract. Still further, the contract between plaintiff and Ingram was for a good merchantable title, since the contract itself declares that the money will be refunded if, upon examination, the title is not found to be perfect. Yet the court not only forecloses Ingram's right within the sixty days, but decrees that he shall fulfill his contract or be foreclosed upon presentation of an amended abstract of title from plaintiff ''showing a clear title'' to said premises. It is not even made to appear whether that clear title shall be shown in Gibson, Renton, or in a stranger. Suffice it upon this proposition to say, that as the evidence and findings both show that defendant Ingram was not in default, the judgment against him is wholly erroneous, and he should have been given a judgment for costs.

For the foregoing reasons, the judgment and order as to appellants Gibson and Ingram are reversed and the cause remanded for further proceedings in conformity with the foregoing opinion.

McFarland, J., and Lorigan, J., concurred.