Civ. No. 5315. First Appellate District, Division One.—March 18, 1927.]

## GEORGE N. HILLWIG, Respondent, *v*. J. F. BOYER, Appellant.

[1] MORTGAGES — MONEY HAD AND RECEIVED — DEED INTENDED AS "ADDITIONAL SECURITY" — FINDING—EVIDENCE.—In this action for money had and received, brought by one who was indebted to another and who delivered a deed absolute on its face to said other, the evidence was sufficient to support the finding of the trial court that the deed in question was not delivered or received for the purpose of passing absolute title,' but was intended merely as "additional security."

[2] ID.—WHEN DEED IS MORTGAGE—SECURITY—INTENT.—If it be the intention of the parties that a deed should simply be security for a present, antecedent, or future indebtedness, then the deed is nothing more than a mortgage with the incidents that attach to mortgages; and in such action it matters not that the trial court found the instrument to be one of "security," for as a matter of law a deed given to secure an indebtedness and not intended to pass title is a mortgage.

[3] ID. — INTENT — EVIDENCE—PROVINCE OF TRIAL COURT.—While the rule is that when evidence is offered to convert a deed absolute in form into a mortgage the evidence ought to be so clear as to leave no doubt that the real intention of the parties was to execute a mortgage, otherwise the intention appearing on the face of the deed ought to prevail, yet the clarity of the proof is largely a matter for the trial court to determine.

---

2. Absolute deed as a mortgage, note, 129 Am. St. Rep. 1137. See, also, 17 Cal. Jur. 735; 19 R. C. L. 261.

3. See 17 Cal. Jur. 756, 757; 19 R. C. L. 263.

[4] ID. — EQUITY — ACCOUNTING — JURISDICTION. — While the instant action was one for money had and received, the cause was tried for the purpose of having a deed absolute on its face decreed a mortgage, which is a proceeding in equity, and equity having acquired jurisdiction for the purpose of decreeing the deed to have been intended as a mortgage, even if the matter of accounting is not of itself a subject of concurrent equity jurisdiction, may with propriety be referred.

[5] ID.—RELIEF AT LAW AND EQUITY—ADMINISTRATION OF—REMEDIES. Legal and equitable relief are administered in this state in the same form and according to the same general plan; and a party cannot be sent out of court merely because his facts do not entitle him to relief at law, nor merely because he is not entitled to relief in equity, as the case may be. He can be sent out of court only when upon his facts he is entitled to no relief either in law or in equity; and consequently an action does not fail because a plaintiff has made a mistake as to the form of his remedy.

[6] ID.—ACTION FOR MONEY HAD AND RECEIVED—EQUITY.—The basis for an action for money had and received is that the defendant has money which in equity and in good conscience he ought to pay to the plaintiff, and, generally speaking, the action lies in all cases where one person has in his possession money which in equity and in good conscience he ought to pay over to another; and the instant action is in the nature of an equitable one, and a debt sufficient for such a purpose may arise from the operation of purely equitable principles.

---

(1) 41 C. J., p. 354, n. 62.    (2) 41 C. J., p. 310, n. 64.    (3) 4 C. J., p. 883, n. 33; 41 C. J., p. 357, n. 70.    (4) 34 Cyc., p. 781, n. 38.    (5) 1 C. J., p. 1009, n. 2.    (6) 41 C. J., p. 29, n. 7.

APPEAL from a judgment of the Superior Court of Los Angeles County. Edward F. Hahn, Judge. Affirmed.

The facts are stated in the opinion of the court.

G. C. DeGarmo and H. B. Cornell for Appellant.

---

4. Jurisdiction assumed for one purpose as retained for all purposes, note, Ann. Cas. 1912A, 803.    See, also, 10 Cal. Jur. 496; 10 R. C. L. 370.

5. Jurisdiction of equity as affected by statute conferring similar jurisdiction on courts of law, note, 55 Am. Dec. 77.    See, also, 1 Cal. Jur. 312; 10 R. C. L. 376.

6. See 17 Cal. Jur. 602; 2 R. C. L. 778.

Hyman Schwartz, E. M. Swartz and Samuel W. Newman for Respondent.

CAMPBELL, J., *pro tem.*—In this action judgment was entered in favor of plaintiff and against defendant for $3,864.92, and from this judgment defendant has appealed. He urges two points: 1. "The evidence does not establish that the deed was intended to be anything other than what on its face it purports to be"; 2. "The *ex parte* order made by the court sending the case to a referee for hearing was void and the judgment predicated upon the report of the referee is without support." The complaint stated an action for money had and received, and the answer controverted the complaint. Without objection, however, the cause was tried by the plaintiff on the theory that he was indebted to the defendant on numerous notes secured by mortgages on his real estate to the amount of $15,000 and accrued interest; that the indebtedness was past due, and that defendant was demanding additional security; that the only additional security he could give the defendant was to deed him all of the mortgaged property to hold until a sale or disposition of the property could be made and the defendant paid, and that plaintiff on December 6, 1918, executed and delivered to defendant a deed, which in effect was nothing more than security to defendant and the control of the properties. The case was tried by defendant on the theory that the deed constituted an absolute sale and conveyance and a full settlement of all indebtedness.

As to the first point urged by appellant the court found that on December 6, 1918, plaintiff owed defendant $15,000 principal and accumulated interest; that on said date the deed was made and delivered to defendant as security; that no consideration passed for said deed; that under the agreement upon which the transfer was made the defendant was to hold the property and sell the same; that defendant was to collect rents and apply the proceeds on the indebtedness of plaintiff, less the expenses of managing the property and the payment of taxes, water bills, interest, and repairs; that on December 24, 1920, the defendant had realized from the sale of said property $19,500 cash and $2,314.67 in rent, and that the interest on the rent money to that date amounted

to $114.99, making the total sum on said date of $21,929.66; that on said date the plaintiff owed the defendant the total sum of $18,438.14, being the principal and accumulated interest on the notes, according to their tenor.

Striking a balance the court found defendant indebted to plaintiff in the sum of $3,491.52, but further found that defendant was entitled to compensation for his services in collecting some of the rents, and fixed such compensation at $75, and rendered judgment for plaintiff for $3,416.52 with interest at seven per cent from December 24, 1920, to date of judgment amounting to $448.40, making the total judgment $3,864.92.

Appellant finds no fault with the amount of the judgment, nor does he find any fault with the correctness of the account returned by the referee, but contents himself with the two points—the sufficiency of the evidence to overcome the deed absolute on its face, and that the court was without jurisdiction to appoint a referee to take an accounting after the court had found the issues in favor of plaintiff.

In support of his contention that the deed was not an absolute transfer of the property described therein, but was given merely as additional security, the plaintiff testified that in December, 1918, he said to defendant: "Mr. Boyer, if you are not satisfied with the security you hold, I will be willing to grant deed you that property and additional property to further secure your claim"; that he afterward got a blank grant deed and read the description of the property to him and he put it down on the typewriter; Mr. Boyer filled out the grant deed; "I took the deed that evening; the next morning my wife and I appeared before a notary public, signed it; I put the revenue stamps on it, took it to the courthouse and recorded it; I paid for the recording fees and for the revenue stamps; that was all the conversation on December 6, 1918; I was to allow Mr. Boyer to collect the rents; Mr. Boyer said 'If I acquire a deed to the property, allow me to collect the rent, I will audit them to your credit, give you credit for everything above interest, taxes.' " Plaintiff testified that he collected some of the rents and after collecting the same he would either mail Mr. Boyer a check or take the money to him and submitted numerous canceled checks which were introduced in evidence. Plaintiff further testified that he handled the trans-

action with Brown Brothers; that he prepared the lease, took it to Mr. Boyer, who signed it, and that he delivered it to the Browns, collected the $330 check and delivered it to the defendant; that he made repairs on the premises and received no compensation therefor, and that he talked to defendant about making certain repairs and defendant told him to have it done and adjust the amount to the rent; that there were continuous attempts made by him to sell the properties and numerous conferences held in regard thereto between himself and the defendant, and that about October, 1920, he had a conversation with Mr. Boyer at the Citizens Trust and Savings Bank, and that those present were Mr. Waldenfels, Mr. Boyer, the escrow clerk, and himself; that when he showed Mr. Boyer the escrow instructions of the proposed sale to Mr. Waldenfels, Mr. Boyer said: "You have only allowed me $17,000. I will ask now $17,500 to release," and plaintiff said: "Mr. Boyer, you have told me that it was originally $16,500, and you told me a few days ago it was $17,000; now you have raised it to $17,500"; that defendant said: "I have changed my mind. I have raised it to $17,500," and he further said: "You can't eat cake and have it too." Plaintiff further testified that under the agreement with Mr. Boyer at the time the property was sold he was to have all over $17,500 that was realized; that defendant stated in the presence of Mr. Waldenfels and himself: "Well, gentlemen, I want to see Hillwig get his equity out of this property. I know he had worked hard for his equity, and all I want is my money. When I get that the balance of it goes back to Hillwig."

W. D. Merickel testified that defendant Boyer stated to him in November, 1920, that Hillwig was owing him $17,000 and when asked, "What shape is that in? Is it in a mortgage or what?" that Boyer replied: "He was holding a deed to the property as security."

J. F. Reynolds testified that he met Boyer in company with plaintiff and others about December, 1920, and that Boyer stated that all the interest he had in the property was $17,000, and George C. Fetterman testified that near the end of 1920 he had a conversation with Mr. Boyer in which Boyer said—quoting from Mr. Fetterman's testimony: "Mr. Hillwig owed him a lot of money and that if he would pay him back some money that he could have his property, some-

thing to that effect—that Mr. Hillwig owed him a lot of money and that he was holding his property as security, something like that.''

The defendant testified that he told plaintiff he would have to have additional security, or a settlement, or he would foreclose; that he received the deed on the sixth day of December, 1918, and filed it for record the next day; that no consideration passed; that none of the notes or mortgages were marked paid or satisfied of record until December, 1920, when the sale of the property was made; that he received $19,600 for the property; that he never paid the taxes on lots 111 and 112; that he did not on December 6, 1918, mark the notes covered, mortgage or trust deeds paid, nor give any evidence of payment at any time until the property covered by the mortgage and trust deeds was transferred by him; that he placed them in escrow.

[1] The foregoing evidence in our opinion is ample to support the finding of the trial court that the deed in question was not delivered or received for the purpose of passing absolute title, but was intended merely as "additional security."

Criticism is made by appellant of the term "additional security" used by the court in designating the nature or character of the conveyance made by respondent to appellant, and cites us to *Renton* v. *Gibson*, 148 Cal. 650 [84 Pac. 186]. That is a case where property was conveyed to the grantee for the purpose of bringing a suit to quiet title. In one complaint it was alleged that the property was conveyed "in trust" and in a subsequent complaint this averment was stricken out and it was alleged that the property was conveyed as "security." There the court says: "If the finding of the court, following in this regard as it does the allegations of the complaint, is to be taken as a declaration that the deed from plaintiff to defendant was security in the sense that it was a mortgage merely, then the finding is not only not clearly and convincingly supported by the evidence, as all the authorities require shall be done before a written instrument of such dignity as a deed shall be proven other than what on its face it purports to be." In that case the complaint also alleges that "up to" a certain date (the date of the deed) plaintiff had title, from which assumption arises that after that date he parted with title, and of course

if plaintiff parted with the title on delivery of the deed, such deed could not be construed to be a mortgage.

Further on in the opinion the court in enunciating the law applicable to the situation here presented says: ''Whatever be the form of an instrument other than a deed of trust, it is of course well settled that if it be intended as security merely, it is a mortgage, title does not pass, and only a lien results in favor of the named grantee, who in law is but the mortgagee,'' and cites section 2924 of the Civil Code to the same effect.

[2] Much discussion is indulged in by counsel for appel·lant for the purpose of emphasizing the fact that both counsel for respondent and the court were at a loss to properly characterize the deed given. On examination of the authorities cited, as well as numerous authorities dealing with the question of the effect of deeds absolute on their face but intended as mortgages, there seems to be a lack of uniformity in the mode of expression by our appellate tribunals in the characterization of such instruments. The consideration to be indulged in is not what shall we call a deed absolute on its face but intended as a mortgage, but rather, is the deed absolute on its face intended as a mortgage or additional security? If either, the characterization given to the instrument is unimportant, the sole question being, did the parties intend by the instrument granting the properties to absolutely vest title in the grantee, or did the grantor reserve unto himself the right to redeem from the deed absolute on its face, by paying the indebtedness, to secure which the deed was given? The law is clear and well settled and needs no elaboration to the effect that if it were the intention of the parties that the deed should simply be security for a present, antecedent, or future indebtedness, then the deed is nothing more than a mortgage with the incidents that attach to mortgages. `It therefore matters not that the trial court found the instrument to be one of ''security,'' for as a matter of law a deed given to secure an indebtedness and not intended to pass title is a mortgage.

[3] Appellant has cited us to many cases holding that when evidence is offered to convert a deed absolute in form into a mortgage the evidence ought to be so clear as to leave no doubt that the real intention of the parties was to execute

a mortgage, otherwise the intention appearing on the face of the deed ought to prevail. We recognize this to be the rule, yet the clarity of the proof is largely a matter for the trial court to determine. As was stated in *Couts* v. *Winston,* 153 Cal. 686 [96 Pac. 357]: "But whether or not the evidence offered to change the ostensible character of the instrument is clear and convincing is a question for the trial court. In such cases as in others the determination of that court in favor of either party upon conflicting or contradictory evidence is not open to review in this court. If, therefore, the evidence offered by plaintiff taken by itself was sufficiently clear, satisfactory and convincing to satisfy the trial court that the deed was in fact a mortgage, the finding made cannot be overthrown merely because numerous witnesses, whose characters are not impeached, gave testimony to the contrary effect."

It is urged under appellant's second assignment of error that this being an action at law, no reference for the purpose of an accounting could be made. Numerous authorities are cited, several of them decided before the adoption of the codes and all involving cases where the reference was for the determination of the entire issues involved. In the instant case all questions of fact had been determined by the court prior to the reference, the court withholding the entry of its findings and final judgment pending the furnishing of an itemized statement by appellant of the net receipts from the rentals, the court making the following minute order: "Upon examination of the testimony for the purpose of determining the proper amount of credits and debits to be allowed and charged defendant, it appears that an itemized statement of debits and credits which was to be furnished by defendant during the trial was not put in evidence; hence it is impossible to accurately figure the amount of the judgment. The order of submission of the cause will be set aside and Willard Goodwin appointed as referee for the purpose of an accounting," etc. Upon the reference being made appellant appeared with his counsel and offered his books in evidence for the purpose of determining the rentals received by him.

[4] While the action is one for money had and received, the cause was tried for the purpose of having a deed absolute on its face decreed a mortgage, which is a proceeding

in equity, and equity having acquired jurisdiction for the purpose of decreeing the deed to have been intended as a mortgage, even if the matter of accounting is not of itself a subject of concurrent equity jurisdiction, may with propriety be referred (*Jones* v. *Gardner,* 57 Cal. 641). **[5]** Legal and equitable relief are administered in this state in the same form and according to the same general plan. A party cannot be sent out of court merely because his facts do not entitle him to relief at law, nor merely because he is not entitled to relief in equity, as the case may be. He can be sent out of court only when upon his facts he is entitled to no relief either at law or in equity. Consequently, an action does not now, as formerly, fail because a plaintiff has made mistake as to the form of his remedy (*Dean* v. *Shingle* 198 Cal. 660 [46 A. L. R. 1156, 246 Pac. 1049]).

**[6]** The basis for an action for money had and received is that the defendant has money which in equity and good conscience he ought to pay to the plaintiff, and, generally speaking, the action lies in all cases where one person has in his possession money which in equity and good conscience he ought to pay over to another (*Sacramento County* v. *Southern Pacific Co.,* 127 Cal. 221 [59 Pac. 568, 825]). This action is in the nature of an equitable one. A debt sufficient for such a purpose may arise from the operation of purely equitable principles (*Fontaine* v. *Lacassie,* 36 Cal. App. 175 [171 Pac. 812]; *Spitzer* v. *City of Oakland,* 32 Cal. App. 748 [136 Pac. 1044]).

This disposes of the errors urged by appellant. From what we have said it follows that there is no merit in the appeal.

The judgment is affirmed.

Tyler, P. J., and Cashin, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 16, 1927.