[S. F. No. 511.    Department Two.—July 8, 1897.]

# M. EHRMAN ET AL., RESPONDENTS, v. M. ROSENTHAL ET AL., APPELLANTS.

MONEY HAD AND RECEIVED — PROCEEDS OF DISCOUNTED NOTE — SALE OF GOODS TO THIRD PARTY—TRIPARTITE AGREEMENT.—Where plaintiffs and defendants each sold goods to a third party under an agreement between the three parties that the purchaser should transfer a note for two thousand dollars to the defendants, and that the defendants should discount the note immediately, and pay one thousand dollars of the proceeds thereof to the plaintiffs, the agreement of the defendants is as distinctly an agreement with the plaintiffs to make such payment as with the other party, which no subsequent agreement between him and the defendants could alter, without the consent of plaintiffs after the time when it became the duty of the defendants to discount the note, and after defendants had in fact discounted the note, and applied the money to their own account, and finally received payment of the note in full, plaintiffs can maintain an action against them for money had and received for their use.

ID.—LIMITED INDORSEMENT OF NOTE—WRITTEN AUTHORITY FOR GENERAL INDORSEMENT—DUTY OF DEFENDANTS.—A limited indorsement of the note to the defendants, without recourse, was not a full performance of the agreement of the third party to transfer it to the defendants for purposes of discount; but such agreement was fully performed when in writing he authorized the defendants to cancel the limitation, and to put him in the position of a general indorser upon the instrument, and from that time, it became the duty of the defendants to discount the note and to pay to plaintiffs the agreed share of the proceeds.

ID.—DEPOSIT OF NOTE AS COLLATERAL—SUBSEQUENT AGREEMENT BETWEEN THIRD PARTY AND DEFENDANTS—RESCISSION—MODIFICATION OF CONTRACT.—After the defendants had deposited the note as collateral for a loan of one thousand dollars from the bank, a subsequent agreement between the third party and the defendants, that they should extinguish his account by applying the proceeds thereon, and paying a small residue to the plaintiffs, cannot have the effect, without plaintiffs' consent, to rescind or modify the agreement of defendants to pay the sum of one thousand dollars to plaintiffs.

ID.—COMPOSITION AGREEMENT OF PLAINTIFFS WITH THIRD PARTY—LIABILITY OF DEFENDANTS FOR RESIDUE—GUARANTY—INDEMNITY OF GUARANTORS BY PRINCIPAL.—A guarantor who has been indemnified by the principal, is liable to the creditors guaranteed to the extent of the indemnity, notwithstanding the creditors may have modified the contract, or released the principal, without the consent of the guarantor; and treating defendants as guarantors of the debt of the third party to the plaintiffs to the extent of one thousand dollars, the fact that plaintiffs made a composition agreement with such third party, in view of his insolvency, to release him from personal liability to them upon the payment by him of thirty-five cents on the dollar of his indebtedness, cannot affect the liability of defendants to plaintiffs under the defend-

ants' agreement to pay to plaintiffs one thousand dollars from the proceeds of the note, defendants not only having received and discounted such note as collateral, but having also received full payment thereof at maturity.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. JAMES M. TROUTT, Judge.

The facts are stated in the opinion of the court.

*Mastick, Belcher & Mastick*, for Appellants.

The facts do not sustain a demand for money had and received to the use of plaintiffs. (2 Greenleaf on Evidence, sec. 117; *Herrick* v. *Hodges*, 13 Cal. 431.) A contract for the benefit of another may be rescinded before it is enforced by the beneficiary. (Civ. Code, sec. 1559; *Steinhart* v. *National Bank*, 94 Cal. 362; 28 Am. St. Rep. 132.) The release of Rosenstein extinguished the liability for which defendants were guarantors. (Civ. Code, sec. 2819.)

*Naphtaly, Freidenrich & Ackerman*, for Respondents.

Under the agreement appellants were liable to respondents for so much money had and received to the use of plaintiff. (*Kreutz* v. *Livingston*, 15 Cal. 344; *Logan* v. *Talbot*, 59 Cal. 652; *Steinhart* v. *National Bank*, 94 Cal. 362; 28 Am. St. Rep. 162; *Carnegie* v. *Morrison*, 2 Met. 381; Greenleaf on Evidence, secs. 117, 118; *Hemmenway* v. *Bradford*, 14 Mass. 121; *Fairbanks* v. *Blackington*, 9 Pick. 93; *Clark* v. *King*, 1 Rice (S. C.) 178; *Strickland* v. *Burns*, 14 Ala. 511; *Tuttle* v. *Ridgway*, 62 Ill. 515.)

HENSHAW, J.—This action is in form for money had and received. Judgment passed for plaintiffs, and from that judgment and from the order denying a new trial defendants appeal. The facts, concerning which there is little or no dispute, are as follows:

Plaintiffs were partners engaged in the wholesale grocery business in the city and county of San Francisco. Defendants were partners engaged in the

wholesale boot and shoe business in the same place.   In the month of August, 1883, J. Rosenstein, a merchant engaged in business in Idaho, came to San Francisco to purchase a stock of merchandise.   He held the promissory note of one Dodge for $2,000.   This note by its terms was payable in October, 1884.   Upon his visit to San Francisco Rosenstein did not have the note in his personal custody; he had left it in Idaho. Rosenstein called upon the defendants, and engaged with them for the purchase of a bill of goods.   At the same time Rosenstein designed to purchase goods of plaintiffs. It was proposed that Rosenstein should buy goods of plaintiffs and defendants and deliver to defendants the Dodge note.   Defendants agreed with Rosenstein to receive the Dodge note, discount it immediately, and pay $1,000 to the plaintiffs and apply the remaining moneys due from their purchase of the note upon the bill of goods which Rosenstein contemplated purchasing.   Rosenstein announced this proposed agreement to plaintiffs.   They sent an agent to defendants to ascertain whether the transaction was to be as represented.   Their agent made inquiry of the defendants, stating that upon the strength of this proposed agreement Rosenstein had applied to them for the purchase of a bill of goods.   Defendants reported to plaintiffs' agent that the transaction was to be as represented.   This was reported to plaintiffs, and thereupon they sold to Rosenstein on credit a bill of goods exceeding in amount the $1,000.   This sale was made upon the assurance of the representation of defendants to plaintiffs' agent.

Rosenstein returned to his home.   In due course the goods of plaintiffs and defendants were forwarded to him, and he in turn mailed the note to defendants, with a letter of instructions requesting them to pay plaintiffs the $1,000 according to the agreement.   Rosenstein, however, had indorsed the note without recourse.   Immediately upon its receipt defendants notified Rosenstein that they refused to discount it, or to pay the

plaintiffs the $1,000, because of the limited indorsement; and about the same time communicated with plaintiffs, explaining to them that they had refused to discount the note for the reason explained, but suggested that they were willing to hold the note for the joint account of themselves and plaintiffs. Plaintiffs refused this offer, stating that they were going to get their money from Mr. Rosenstein. Thereupon Rosenstein in writing authorized defendants to erase the words " without recourse," and if they wished, and it was desired, to write his name as a general indorser upon the back of the note. This the defendants refused to do, writing to Rosenstein to that effect, and requesting further suggestions. Rosenstein then in reply wrote to defendants requesting them to return him the note. Defendants in the meantime had banked the note with the London and San Francisco Bank, as collateral to their own paper, and had drawn thereupon the sum of $1,000. To Rosenstein's proposal they replied that he could have his note back upon the payment to them of the $1,000. To this Rosenstein replied, complaining that they had violated their agreement, and again demanding the return of the note. Finally, on April 24, 1884, Rosenstein again wrote to defendants, complaining anew of their violated agreement. As he could neither obtain the note nor any credit to plaintiffs upon account of it, seemingly as a last resort he asked the defendants to apply the proceeds of the note in extinguishment of his account with them, and turn over the remaining moneys, amounting to $77.90, to plaintiffs. This defendants did, crediting the account of Rosenstein with the entire principal and interest of the note. Upon receipt of the $79.90 plaintiffs made demand upon defendants for the payment of the remainder of the $1,000, which was refused. Rosenstein at the time of this demand was indebted to plaintiffs for the goods purchased under the agreement, in excess of the amount demanded. Later in the year 1884 Rosenstein became embarrassed in business, and was unable to pay his

debts. His San Francisco creditors, including the plaintiffs, assigned their demands for collection, and a composition agreement was made with Rosenstein by his creditors, including plaintiffs, under which plaintiffs accepted thirty-five cents on the dollar for their claim against Rosenstein, and released him from the payment of the remainder. This action was begun before the date when the composition agreement with Rosenstein was entered into. The Dodge note was paid to defendants upon maturity.

Under this state of facts the court held that defendants became liable to plaintiffs in the sum of $1,000, and that the amount unpaid thereof, to wit; the sum of $922.10, was subject to a credit of thirty-five cents on the dollar paid thereon by Rosenstein, and awarded judgment in favor of plaintiffs for the sum of $599.37, with interest.

The agreement between these parties was not a contract between Rosenstein and defendants for the benefit of plaintiffs, but was in fact a tripartite agreement under which plaintiffs sold goods to Rosenstein upon his agreement to forward the note to defendants, and defendants' agreement to discount it, and pay them $1,000 of the proceeds for Rosenstein's account. The agreement of defendants as principals was as distinctively an agreement with plaintiffs to do this thing as it was an agreement with Rosenstein. In sending the note to defendants with the limited indorsement, it may be conceded that Rosenstein did not fulfill his engagement, and that defendants were entitled to receive the note bearing his general indorsement. This we say may be conceded, though the contract was entirely silent upon the matter. But, in so sending the note, Rosenstein did not violate his agreement. He merely failed fully to perform it. But there was abundant time and opportunity and means at hand for a complete performance, and he did completely perform when in writing he authorized defendants to cancel the limitation and to put him in the position of a general

indorser upon the instrument. At and after that date
defendants' duty to discount the note and pay the proper
share of the proceeds to plaintiffs was in full existence.
It cannot be successfully contended that the later trans-
actions between Rosenstein and defendants amounted
to a new and executed contract, which relieved them
from their duty to plaintiffs. Rosenstein, it is true,
after repeated and fruitless efforts to compel defendants
to pay the moneys to plaintiffs, and after his failure
also to obtain a return of the note, did write to them
and propose that they extinguish his account by apply-
ing thereto, so far as was necessary, the proceeds of the
note, and after so doing to pay over the trifling sum
which remained to plaintiffs. This proposition defend-
ants promptly accepted. There seemed to be no hesi-
tation upon their part at that time in discounting the
note for their own benefit. But, as plaintiffs were a
party to this contract, and as the consideration prompt-
ing them to sell the goods to Rosenstein was the express
promise of defendants to discount the note and pay over
to them this money, it was not in the power of Rosen-
stein or defendants, or of both, to rescind the contract
or modify its terms to the detriment of plaintiffs with-
out their express consent.

Appellants' contention that the action, in form money
had and received, cannot be maintained upon these
facts, is not tenable. At the time when, under the
agreement, it became the duty of defendants to discount
the note, and pay over of the proceeds $1,000 to plain-
tiffs, plaintiffs were justified in treating defendants as
having in their possession moneys had and received by
defendants for their own use. The action, it is true,
lies only as to money, or as to some specific article of
property agreed to be treated as money; but plaintiffs
were justified under the facts in claiming that defend-
ants were holding the $1,000 to their own use. (*Kreutz*
v. *Livingston*, 15 Cal. 344; *Logan* v. *Talbot*, 59 Cal. 652.)
And certainly, when defendants in fact discounted the
note and applied the moneys to their own account, it is

plain that they held $1,000 of plaintiffs' moneys which should have been paid over to them.

It is next insisted that defendants should be treated as guarantors of Rosenstein's indebtedness to the extent of the $1,000, and that Rosenstein, the principal, having been released under the composition agreement, defendants themselves are likewise released. (Civ. Code, sec. 2819.)   But, if defendants be treated as guarantors, then they are guarantors who have been indemnified by their principal, for the Dodge note was not only received and discounted by them, but was in fact paid at maturity. Section 2824 of the Civil Code declares that a guarantor who has been indemnified by the principal, is liable to the creditors to the extent of the indemnity, notwithstanding that the creditor, without the consent of the guarantor, may have modified the contract or released the principal.

The judgment and order appealed from are affirmed.

McFARLAND, J., and TEMPLE, J., concurred.

Hearing in Bank denied.