[Civ. No. 2180.  First Appellate District.—February 6, 1918.]

## EMILE FONTAINE et al., Respondents, v. SIMEON LACASSIE et al., Appellants.

CONTRACT—FURNISHING MONEY FOR BUILDING OF HOUSE—HOME FOR CONTRIBUTOR—SUBSEQUENT EJECTMENT—RECOVERY OF MONEY—ACTION FOR MONEY HAD AND RECEIVED.—Where a mother-in-law furnished money to her daughter-in-law to build a house on the latter's property under an agreement between them that the former might occupy the house during her life, with the proviso that if the land was sold before her death by the latter she would repay to the former the money furnished by her for the building of the house, and the mother-in-law shortly after the completion of the house was ejected therefrom by her daughter-in-law, the former has the right to rescind the contract, and recover the entire amount paid in an action for money had and received.

ID.—RESCISSION OF ENTIRE CONTRACT—PARTIAL FAILURE OF CONSIDERATION.—Where the contract is entire and the consideration has partially failed by reason of the default of one of the parties, the contract may be rescinded by the other party, who may recover the money which he has paid thereunder.

APPEAL from a judgment of the Superior Court of Contra Costa County. A. B. McKenzie, Judge.

The facts are stated in the opinion of the court.

W. S. Tinning, and A. B. Tinning, for Appellants.

George C. Thrasher, for Respondents.

BEASLY, J., *pro· tem.*—Catherine Fontaine, one of the above-named plaintiffs, is the mother of the defendant Simeon Lacassie, and the latter's codefendant is his wife, who owns a piece of land at Walnut Creek in Contra Costa County. In the month of December, 1914, Mrs. Fontaine, who was then unmarried, furnished to Mrs. Lacassie the sum of $439.50 with which to build a house on said property, as the trial court found, under an agreement between them that Catherine Fontaine might occupy the said house during her life, with the proviso that if the land was sold before her death by Mrs. Lacassie she would repay to her mother-in-law the money furnished by her for the building of the house. It is further found that Mrs. Lacassie was to attend to expending the money in erecting the house, and that she did so, paying the bills with the money so furnished by Mrs. Fontaine. The building was complete on January 1, 1915, and the plaintiffs occupied it thence until the month of December following, when the defendants ordered them off the premises with threatening and violent language and, as the evidence discloses, had Mrs. Fontaine arrested and removed from the property on a charge of insanity. She never returned to the house thereafter. The court also found that the object of the agreement to build the house was to furnish a home for Mrs. Fontaine. The defendants on this appeal insist that this finding has no support in the evidence, but the whole tenor of the testimony supports it; and it also specifically appears that when the money was advanced to Mrs. Lacassie by her mother-in-law the latter had become too infirm to work in the laundry where she had been employed, that the defendants were to charge her no rent, and were to furnish her with wood, water, and milk free of charge. From this—and indeed from the entire evidence—it may be fairly inferred that the agreement itself under which the

money was furnished was that Mrs. Fontaine should occupy the house as long as she should live, unless the property should in the meantime be sold. This evidence certainly supports the finding attacked.

The defendants also rely for a reversal upon a question of pleading, claiming that the facts above set forth will not support a judgment for ''money had and received.'' The language of the pleading material to this question, to be exact, is as follows: ''That . . . the defendant received the sum of $439.50 from the plaintiff for the use and benefit of plaintiff.'' It is plain from these facts that the money was furnished by Mrs. Fontaine to Mrs. Lacassie to be used by the latter for Mrs. Fontaine's benefit, namely, to provide a home for her in her old age, and that she was within a comparatively short time after having furnished the money deprived of its benefit and use by being ejected from the house. The view of the trial court was that this evidence sustains the judgment. With this view we are constrained to agree.

The contract here was entire within the rule announced in the leading case of *Wooten* v. *Walters,* 110 N. C. 251, [14 S. E. 734, 736], upon the construction of entire and divisible contracts—a rule approved by our own supreme court in *Sterling* v. *Gregory,* 149 Cal. 117, [85 Pac. 305]. In the latter case it was also held that where a contract is entire, there is a right of rescission thereof for partial failure of consideration under section 1689 of the Civil Code. This proposition is illustrated in this state also by *Howlin* v. *Castro,* 136 Cal. 605, [69 Pac. 432]—a case of somewhat different nature, where the facts were that Castro undertook to take care of Howlin during the remainder of the latter's life in consideration of receiving Howlin's property at his death. Howlin delivered a deed to one Rowling as security for the performance on his part of this agreement, and Castro after performing the agreement on his part for a year discontinued doing so. The supreme court held that the contract being executory and having been broken, the plaintiff was not confined to a remedy for damages, but might have the deed delivered up and canceled in an action for that purpose, thus receiving back all the consideration which he had promised for the performance of Castro's agreement to care for him. The ancient rule of the court of king's bench, the fountain of common-law pleading, was that where there is an entire contract, and

36 Cal. App.—12

by defendant's default plaintiff could not perform what he had undertaken to do, he had a right to put an end to the whole contract and recover back money which he had paid thereunder. (*Giles* v. *Edwards,* 7 Term Rep. 181.)

Lord Mansfield, in *Moses* v. *MacFerlan,* 2 Burr, 1005, adapted the count for money had and received to an action of the character of the case of Mrs. Fontaine. Previous to the decision of that case a debt proved in support of this action had always been a debt arising under the operation of purely legal principles. In that case there was clearly no debt. Indeed, the only possible ground of recovery was that it would have been inequitable under the circumstances to permit MacFerlan to retain the money. The real question, therefore, was whether a debt sufficient for the purposes of an action *indebitatus assumpsit* might arise from the operation of purely equitable principles. The court unanimously answered the question in the affirmative, Lord Mansfield stating the scope of the obligation as follows: ''If the defendant be under an obligation, from the ties of natural justice, to refund, the law implies a debt, and gives this action, founded in the equity of the plaintiff's case, as it were upon a contract . . . This kind of equitable action, to recover back money which ought not in justice to be kept, is very beneficial, and therefore much encouraged. It lies only for money which, *ex aequo et bono,* the defendant ought to refund. . . . In one word, the gist of the action is that the defendant upon the circumstances of the case is obliged by the ties of natural justice and equity to refund the money.''

''From the use of such expressions as 'obliged by the ties of natural justice and equity' it must not be inferred that the right of recovery in a particular case is a problem of moral philosophy. Recovery does not depend upon the trial judge's idea of justice in the particular case, nor yet upon the jury's notion of what is right between man and man. Here, as elsewhere, the courts must be guided by principles and rules fairly capable of uniform administration. These must be sought in the reports of decided cases.'' (7 Modern American Law, p. 372.)

Here, as we have seen, the courts of our own state have held that an agreement such as that made by the parties to this action may, under circumstances such as the trial court found to exist here, namely, where the contract is entire and

the consideration has partially failed by reason of the default of one of the parties, be rescinded by the other party, who may then recover the money which he has paid thereunder.

From this discussion we think it fairly deducible that in an action such as this the plaintiff need not set forth the entire contract but may sue *quasi ex contractu* for money had and received.

It is argued that the house was personal property and could have been removed by Mrs. Fontaine. The terms of the agreement under which it was built negative this contention, for the intent of the parties evidently was that it should remain permanently on the land; and the trial court found that M. E. Lacassie retained the house for her own use and benefit.

This disposes of the points urged in support of the appeal. The judgment is affirmed.

Lennon, P. J., and Kerrigan, J., concurred.