[Civ. No. 3449.   Third Appellate District.—May 26, 1928.]

WALTER DUNGER et al., Appellants, v. M. L. WHITNEY et al., Respondents.

C. W. Braswell for Appellants.

J. C. Thomas for Respondents.

BUCK (G. H.), J., *pro tem.*—This action is brought for the purpose of foreclosing the rights of certain vendees arising out of a contract of purchase and sale of real estate. The form of the complaint was that of an ordinary action to quiet title. In their final pleadings the defendants, by way of cross-complaint, "disclaimed any interest in the aforesaid property upon which the plaintiffs have brought

suit to quiet title'' and alleged the contract in question was procured through the fraud of the plaintiffs, to the damage of the defendants in the sum of $5,500.

The court gave judgment that the defendants ''have no interest in or to the aforesaid real property, and plaintiffs are hereby adjudged to own and possess the aforesaid real property,'' and also decreed that the defendants and cross-complainants recover damages from the plaintiffs in the sum of $5,500, together with interest and costs. From this judgment the plaintiffs appeal.

By the contract out of which the action arose the plaintiffs agreed to sell to the defendants 160 acres of land lying in the county of Tulare for the sum or price of $8,000, to be paid as follows, to wit: By the transfer by execution of a deed from the defendants to the plaintiffs of a house and lot in the town of Lindsay ''which is taken and received on the consideration herein of $8000.00,'' for the sum of $2,000, and the remainder of said $8,000 to be paid ''on or before ten years from the date of this agreement.'' It was further agreed that the deferred payments shall bear interest for the first year at the rate of three per cent per annum, payable annually, for the second year at the rate of four per cent payable annually, and for each succeeding year at the rate of seven per cent payable annually; and it was further agreed that the defendants should have the right to immediate possession of the premises, and in consideration thereof should pay the second installment of taxes for 1922–23, and, also, subsequent taxes, assessments, liens, levies, or charges which may be laid or placed upon said property, and not allow the same to become delinquent; and it was further agreed that the plaintiffs should execute to the defendants a deed of the above-described property when the defendants had kept and performed all the terms and conditions of the agreement; and the defendants also agreed ''to make the payments as herein specified upon the dates and in the amounts as herein provided, and upon their failure so to do, the said parties of the first part shall be relieved from all and any obligations to deliver said deed and shall be relieved from'' the return of any payment either of principal or interest made upon the purchase price as herein provided, and all payments upon the principal or interest shall be deemed and agreed to be liquidated dam-

ages for the use and occupancy of said premises during the continuance of the agreement and the parties of the first part shall have the right to make entry in the event of the failure to perform the terms and conditions of the agreement, and shall be entitled to peaceable and quiet possession without court order or decree. And it was further provided that time should be the essence of the agreement. This agreement was executed on January 2, 1923, at which time defendants executed their deed to the lot in Lindsay and entered into possession of the land in question and commenced to cultivate the same. The lot in Lindsay was afterwards sold by plaintiffs.

The action was commenced on January 10, 1925, and the trial was had on September 26, 1925, and by leave of court afterwards obtained the defendants filed on January 19, 1926, their second amended cross-complaint which was used by the court as the basis of the findings that were filed herein on March 22, 1926. It was stipulated that the answer filed by the plaintiffs to the first amended cross-complaint should be deemed to be applicable to the second amended cross-complaint. In this cross-complaint plaintiffs, after alleging the contract of purchase and sale, alleged that at the date of said exchange the plaintiffs did, in answer to the questions of the defendants, state the following: ''That there was no black alkali upon the 160 acres aforesaid; that there was no hardpan thereon; that said quarter-section of 160 acres was fine land, and very productive and good for farming purposes, and good to procure and grow alfalfa thereon, and other farm products, that the soil was the very best; as further inducement to obtain the signatures of cross-plaintiffs to the aforesaid contract of exchange, the plaintiffs did then and there promise and agree that if cross-complainants would sign the said contract aforesaid, he, the said plaintiff, Walter Dunger, would loan the defendants and cross-complainants the sum of $500.00 for the purpose of improving the said 160 acres of land mentioned in the aforesaid contract; that he utterly failed and refused to do so, and thereafter, to wit, stated that he did not have the $500.00, but if these cross-complainants would obtain the said $500.00 from someone, he, the said Walter Dunger, would cause a good and sufficient deed to be made to these cross-plaintiffs and let the cross-plaintiffs execute the

first mortgage on the aforesaid 160 acres described in the contract aforesaid, and that the said Walter Dunger would take a second mortgage for what was due him on the said real estate; that the cross-plaintiffs did procure the said loan for the purpose of improving the said property, and then the said Walter Dunger refused and failed to make the deed to these cross-plaintiffs, and has continued to refuse hitherto.'' The aforesaid matters are set out in paragraph IV of the second amended cross-complaint, and cross-complainants then further allege that ''by reason of the allegations, which were false guarantees and assurances, mentioned in paragraph IV of this amended cross-complaint, the cross-plaintiffs were induced to and did sign the aforesaid contract, and would not have signed it had not the plaintiff Walter Dunger made the said promises and assurances, and by reason of the said guarantees, assurances and promises of said plaintiffs, the said cross-complainants did sign and convey away the aforesaid property.'' The cross-complainants further allege that by reason of ''the aforesaid false and fraudulent promises by the plaintiffs'' defendants did spend in work and labor the sum of $3,500, and did part with the house and lot aforesaid—that the value of said house is $2,000 with and including the lot upon which it is situated. That the cross-plaintiffs were damaged $2,000 by reason of being induced by plaintiff to exchange the premises at Lindsay. The aforesaid 160 acres described in the contract is worthless for farming purposes and is strongly impregnated with black alkali, except in small patches, and that for farming purposes the same is worthless. Cross-plaintiffs further allege ''that the cross-complainants have been damaged as follows: In the fact that the plaintiff refused to loan the cross-complainants the sum of $500.00, as aforesaid, for the improvements, and the sum of $3500.00 for work and labor performed in the improvements of the said property, expending thereon the sum of $3500.00, as aforesaid, in improvements.'' In its findings, based upon the foregoing pleading, the learned trial judge finds that ''the defendants and cross-complainants have disclaimed any right, title or interest in and to the real estate upon which the plaintiffs brought action to quiet title,'' and the court finds ''that each and every allegation of the defendants' second amended cross-complaint are true''; and

the court further finds that the plaintiffs did make the representations charged in the cross-complaint, and did further find that "by reason of such allegations, guarantees and assurances" that the defendants were induced to, and did sign the contract, and that by reason of the "aforesaid false and fraudulent promises by the said plaintiff, defendants did expend in work and labor the sum of $3500.00 and did part with their house and lot, as aforesaid, and that the value of the house and lot is $2000.00, and that the defendants were damaged $2000.00 by reason of being induced by the plaintiff to exchange the property at Lindsay, and that the aforesaid 160 acres is worthless for farming purposes and is strongly impregnated with black alkali except in small patches, and that for farming purposes the same is worthless," and the court further found "that each and all of the statements and averments were untrue and known by the plaintiff to be untrue; that neither of the defendants or either defendant knew that any of the said statements or averments were untrue but believed said statements of the plaintiff and averments to be true and acted upon them, and but for them having been made by the plaintiff, defendants and cross-complainants would not have executed and delivered the aforesaid agreement." And as its conclusions of law the court found that the defendants and cross-complainants are entitled to $5,500 as prayed for in their second amended cross-complaint.

From the evidence taken at the trial it appears that immediately upon the signing of the contract in January of 1923, the defendants went into possession of the premises, and there is no evidence that they have ever surrendered, or offered to surrender the premises to the plaintiffs, or have vacated them. Also, there is evidence tending to show that defendants, as early as the spring of 1923, were aware of the fact that the land was impregnated with alkali, and that the hard-pan was very near the surface and that it was not suitable for the raising of alfalfa; also, the evidence shows, without conflict, that as a part of the consideration for their purchase, the defendants received personal property of the value of $550. The evidence also shows, without conflict, that no part of the annual interest on the balance of $6,000 was ever paid; and the evidence also shows, without conflict, that no part of the taxes due since 1923

have been paid by the defendant, but that they went delinquent and the plaintiff was obliged to pay them and, furthermore, that nothing has been paid on the contract since it was signed.

In the recent case of *Paolini* v. *Sulprizio*, 201 Cal. 683 [258 Pac. 380], our supreme court in bank, after a full review of the authorities, stated that "three remedies are open to the party defrauded in a contract for the purchase of real estate. One is rescission, whereby upon the discovery of the fraud he repudiates the contract, offers to return what he has received, and seeks a restoration to his original position, claiming whatever damage he may have suffered by reason of the unconscionable conduct of the other party; or, two, he may affirm the contract, retain what he has received, and sue for his damages in an action for deceit. . . . He consents to be bound by the provisions of the agreement, but does not thereby release or waive his claim for damages arising from a fraud collateral to the agreement. He must, himself, be willing and able to perform on his part, and it must be conclusively taken that he stands ready and willing to pay the full consideration called for by the contract. . . . From any award which may be made because of the fraud must be deducted any unpaid part of the purchase price. In harmony with this principle which permits the buyer to retain the property and bring suit for the recovery of the damages which he has sustained, there is a third course open to a defrauded vendee. He may set up the seller's fraud as a partial defense or counterclaim without any offer of restitution, and recoup his damages in the action brought by the guilty party to the contract.''

It is unmistakably ·evident, both from the evidence and findings touching his proposed measure of damage as well as from the position which counsel takes in his pleadings and argument, that the defendant and cross-complainant is not affirming the contract and is not treating his cross-complaint as an action for deceit. In his brief, learned counsel argues "we practically rescind the contract by our disclaimer." On the other hand, the measure of damage which he seeks to apply and sustain is nowise responsive to any plea of deceit. (*Pembrook* v. *Houston*, 41 Cal. App. 54, 56 [181 Pac. 828]; *Foster* v. *Graham*, 63 Cal. App. 601

[219 Pac. 476]; *Paolini* v. *Sulprizio, supra,* citing *Pierce* v. *Hellenic Co.,* 76 Misc. Rep. 473 [135 N. Y. Supp. 605], and *Stearns* v. *Kennedy,* 94 Minn. 439 [103 N. W. 212].)

It is therefore evident that learned counsel is seeking to avail himself of the fraud of the plaintiff to rescind the agreement and obtain "a restoration to his original position, claiming whatever damage he may have suffered by reason of the unconscionable conduct of the plaintiff." But in assailing the unconscionable conduct of the plaintiff for purposes of rescission, he has failed to observe that portion of the rule which requires that he also do equity and restore or offer to restore what he has received under the contract which he is seeking to annul. (Sec. 1691, Civ. Code; *Gates* v. *McLean,* 70 Cal. 42, 50 [11 Pac. 489].) It is true he has inserted in his cross-complaint the averment that "the plaintiff herein has brought suit to quiet title to the aforesaid property, that the cross-complainants disclaim any interest in the aforesaid property upon which the plaintiffs have brought suit to quiet title thereto." And in his brief counsel states: "We practically rescind the contract by our disclaimer." And it is true that the learned trial court apparently so found; and did decree that the cross-complainant "had no interest" in the aforesaid real property, and the plaintiffs were accordingly adjudged "to own and possess" the aforesaid real property. Such a mere allegation in the pleadings cannot be held to be sufficient to take the place of the necessary offer to restore possession. (*Hammond* v. *Wallace,* 85 Cal. 522, 531, 532 [20 Am. St. Rep. 239 [24 Pac. 837]; *Zeller* v. *Mullegan,* 71 Cal. App. 617, 625, 626 [236 Pac. 349]; *Maddock* v. *Russell,* 109 Cal. 417, 426 [42 Pac. 139].) Also, there is no evidence in the record showing or tending to show that the cross-complainants have ever restored or offered to restore the personal property of the value of $550 which they received as a partial consideration for their agreement.

Furthermore, as regards the allegations and findings of fraud on the part of the plaintiff, while it is alleged that plaintiff promised to loan the defendant at the time of the agreement the sum of $500, there is no averment in the complaint to support any finding that such promise was made by the plaintiff without any intention on the part of the plaintiff to perform the same, or with intent to de-

ceive or mislead the defendants. As stated in *Hickman* v. *Johnson*, 36 Cal. App. 342, at 346 [178 Pac. 145, 147]: "There is no such allegation. It is not sufficient to allege that such promise was false or fraudulent (*Rheingans* v. *Smith*, 161 Cal. 362 [Ann. Cas. 1913B, 1140, 119 Pac. 494])." But the trial court evidently allowed its finding of damage to be based to some extent upon the alleged breach of the merely collateral verbal promise to make the $500 advance. For the court does find that "the cross-complainants were induced to and did sign the aforesaid contract and would not have signed it had not the plaintiff Walter Dunger, made the said promises and assurances, and by reason of the said guarantees, assurances and promises of the said plaintiffs the said cross-complainants did sign and convey away the aforesaid property. That by reason of the aforesaid false and fraudulent promise by plaintiffs, defendants and cross-complainants did expend in work and labor the sum of $3500.00, and did part with their house and lot aforesaid. That the value of said house is $2000.00 with and including the lot upon which it is situated." But, as already indicated, to the extent that this resulting loss of $5,500 is charged to have been brought about by plaintiff's failure to keep his collateral promise to loan the $500 the finding of damage is uncertain and cannot be sustained. "The mere failure to perform a parol agreement made in good faith is not fraud." (*Feeney* v. *Howard*, 79 Cal. 525, 529 [12 Am. St. Rep. 162, 4 L. R. A. 826, 21 Pac. 984].)

If it be conceded, as learned counsel vigorously contends in his brief, that the defendants have been defrauded by the plaintiffs, it fails to appear that the defendants, through their learned counsel, have chosen to avail themselves of some one of the plain and ample remedies that could and would have been given them by the court under the law of the land if properly invoked.

The judgment appealed from is therefore reversed.

Hart, Acting P. J., and Plummer, J., concurred.