[Civ. No. 3763. Third Appellate District.—May 15, 1929.]

DAVE C. ANDERSON, Respondent, v. VAN CAMP SEA FOOD COMPANY, INC. (a Corporation), et al., Appellants.

Loucks & Phister for Appellants.

Meserve, Mumper, Hughes & Robertson and Baldwin Robertson for Respondent.

THOMPSON (R. L.), J.—This is an appeal from a judgment in favor of plaintff in a suit in *assumpsit* to recover purchase money wrongfully retained by the vendor after a breach of contract to sell and convey a fishing boat.

The appellants operated a fish canning and packing establishment at San Pedro, California. March 4, 1918, the respondent executed and delivered his note and entered into a written contract termed a "purchase lease," with the appellants, by the terms of which they agreed to sell and convey to the respondent a motor-boat called "Freedom" for the sum of $8,500. This contract contained the following provision:

"The above note is given . . . for the consideration that the said lessor has agreed . . . that upon the payment of said note, . . . at maturity . . . they will sell and transfer to the undersigned . . . the boat 'Freedom.' . . . The legal title thereof is (to remain) in said lessor . . . until they shall make the aforesaid sale and transfer. . . . This note is payable in installments of one thousand dollars on or before June 15, 1918—Balance to be (paid from) the boat's share of all earning."

This contract contained no forfeiture clause. Contemporaneously with the execution of this contract and note another agreement was entered into between the same parties, by the terms of which the plaintiff was employed for the seasons of 1918, 1919 and 1920, to use said boat and actively engage in fishing exclusively for the appellants, promptly cleaning and delivering to the cannery at San Pedro, all fish caught, on consideration of which the appellants prom-

ised to pay the market price for all albacore, tuna, skipjack and other fish. The boat was to be registered in the name of the vendor and remain its property until fully paid for. The contract of employment, however, provided in part that:

''Whereas second party (the respondent) is the owner or the operator of a boat . . . named 'Freedom,' and . . . second party is indebted to first party at this date in the sum of $8,500.00, it is agreed that from time to time at the option of the first party, this contract may be extended until any and all such indebtedness . . . is paid in full. . . . It is herewith agreed by both parties that this contract (for fishing) shall cover the seasons of 1918, 1919 and 1920. . . . Second party herewith agrees to haul fish at any time for the first party at the rate of $50 per day. Second party to pay all expenses.''

Subsequently a similar written contract for fishing in the Mexican waters of Lower California for the season of 1919 was executed. These fishing expeditions were not profitable. Later oral agreements were made, by the terms of which the respondent consented to use the boat ''Freedom'' and render personal services in hauling fish and supplies for appellants in consideration of agreed cash wages and an additional credit to be allowed on his note for the purchase of the boat. Pursuant to these oral agreements, respondent testified that in the season of 1920, he worked ninety days, for which he was paid $10 per day as wages, with a promise to credit him with $15 per day additional on the purchase price of the boat, for which latter sum appellants failed to give him credit. He testified:

''In the latter part of June he (Gilbert Van Camp) told me I could get a contract to haul fish (for appellants). He said I would be paid $25.00 a day for the boat and that they would pay all expenses. The company would pay me $10.00 per day in cash for my time and $15.00 a day, as then agreed on, was to be applied as the boat's share. I worked ninety days and was paid $10.00 a day which was deducted from the $25.00 a day, leaving $15.00 per day as the boat's share to be applied against the indebtedness owed by me on the boat.''

In 1921 the respondent had no specific employment with the appellants. But in 1922 he was again hired for a term of ninety days, agreeing to use the boat and haul fish and

supplies under a similar contract for $25 per day, except that from this sum he was to receive only $150 per month, the balance, to wit, $1,800 was to be credited on the boat account. Mr. Gilbert Van Camp substantially corroborated this oral contract of employment. He said:

"My recollection is that when he (the respondent) tendered, we were to credit his account $15.00 or $20.00 a day for the boat, and in addition we were to pay for gas, oil, and food actually used while tendering. During the season of 1920 Mr. Anderson tendered for the Van Camp Sea Food Company, that is, hauled fish and supplies. . . . During that time we paid him a salary for himself and agreed to credit his account. . . . (on) the boat with so much per day for the use of the boat."

There may be some conflict in the evidence regarding the time the respondent was employed under the last-mentioned contract. But the attention of the court is not called to any evidence indicating that these two items of $15 per day for ninety days' service each season for two years, aggregating the sum of $3,150, were ever credited to his boat account or otherwise paid. There are other items for which the respondent claimed he had not been paid. These other items, however, need not be considered. ▮ The appellants may not complain if the trial court allowed the respondent less than the aggregate amount which might find support by the record. He was given judgment for the sum of $2,813.53, together with interest. At least this sum does find support in the evidence, although the testimony is conflicting.

The chief discrepancy between the account of the appellants and the respondent in the various transactions involved in this suit is the omission to credit the boat account with the agreed sums above mentioned for hauling supplies and the fact that numerous items were charged to the respondent on account of nets and equipment for the boat, which under the terms of the note and contract were to be supplied by the vendor in consideration for the original purchase price of $8,500. The note and contract clearly imposed upon the appellants the obligation of equipping the boat with machinery, nets and apparatus. The agreement read:

"The . . . lessor has agreed and . . . they will sell and transfer to the undersigned, at the price of said principal

and interest the boat 'Freedom' . . . *together with all nets and equipment.*"

The appellants assert that the respondent is barred from maintaining this action for the reason that he was in default for failure to pay the first installment of $1,000 as provided by the note within the time prescribed.

The record, however, contains evidence in support of the implied finding that the respondent was not guilty of a breach in this regard. The respondent testified that he turned over his automobile, which was sold for $600, and the proceeds, less the sum of $135 expended as costs of sale, were paid to appellant and credited on the boat account in 1918. He also testified that he paid in behalf of appellants the further sum of $800 or $900 for fishing nets and equipment for the boat, at the time it was first launched, which sum should also have been credited to the boat account. These two payments exceed the amount of the first cash installment required. If these payments were not promptly made within the time prescribed, the delay was waived by subsequently crediting the proceeds of the sale of the automobile without objection and by conduct indicating that strict compliance with respect to the time of making this payment was not insisted upon.

In spite of these substantial payments made by the respondent, the appellants, without notice and without compensating the respondent, sold and conveyed the boat to another purchaser in 1924. This conduct amounted to a rescission and abandonment of the contract on the part of the appellants, and authorized the instituting of this suit in *assumpsit* against the vendor for the money paid by respondent and retained on account of the purchase price of the boat. (17 Cal. Jur. 614, secs. 10, 11, 13.) In *Bankston* v. *Hill,* 37 A. L. R., note, page 102, it is said: "Where the contract of conditional sale contains no forfeiture clause, express or implied, the only provision in this regard being a reservation of the title until payment of the purchase price, if the seller, upon default of the buyer enforces this latter clause by retaking the property and disposing of it to his own use, he renders himself liable to account to the buyer for the money paid by the latter on the purchase price."

The principle announced in *San Diego Const. Co.* v. *Mannix*, 175 Cal. 548, 553 [166 Pac. 325, 327], is applicable to the present case, as follows:

"Where performance of a contract to convey is due and the vendor refuses to perform it, or fails to perform on being duly requested to do so, . . . the vendee may, if he chooses, treat such breach as an abandonment and termination of the contract and may then abandon it himself, and 'the contract having thus come to an end, he may sue at law to recover what he has paid, in an action for money had and received; for, the contract being at an end, the vendor holds money of the vendee to which he has no right, and to repay which, therefore, the law implies his promise.' (*Glock* v. *Howard*, 123 Cal. 10 [69 Am. St. Rep. 17, 43 L. R. A. 199, 55 Pac. 713]; *Alderson* v. *Houston*, 154 Cal. 12 [96 Pac. 884]; 3 Elliott on Contracts, sec. 2095; 1 Sugden on Vendors, p. 357.)"

■ Where the vendor has resold and conveyed the property to another person and is, therefore, unable to transfer title to the original vendee, demand for performance is unnecessary as a prerequisite to the maintenance of an action to recover the purchase money which has been paid. ■ The resale of the boat by the vendor and consequent inability to deliver it to respondent pursuant to the contract, created a failure of consideration. (*Russ L. & M. Co.* v. *Muscupiabe Land & W. Co.*, 120 Cal. 521 [65 Am. St. Rep. 186, 52 Pac. 995].) Where the consideration has wholly failed, formal rescission on the part of the vendee is unnecessary. (*Richter* v. *Union L. & S. Co.*, 129 Cal. 367, 373 [62 Pac. 39].)

■ Except for the payment of the first installment of $1,000 there was no limitation of time designated for the fulfillment of the contract. When the time for the completion of a contract is omitted, the law implies that a reasonable time is intended to be allowed for the performance. (6 R. C. L. 896, sec. 283; 6 Cal. Jur. 218, sec. 143.) In determining what period constitutes a reasonable time, when the contract is silent in that regard, the situation of the parties and the nature of the transaction which is involved must be considered. (6 R. C. L. 896, sec. 283.) ■ In the present case the contract of employment provided that: "At the option of the first party, this contract may be extended until

any and all such indebtedness . . . is paid in full." From the fact that the appellants orally renewed their contract employing the respondent to haul fish for its benefit as late as 1922, specifically agreeing to credit the boat account with a portion of the compensation therefor, it is evident that the agreement to purchase the boat was still considered to have been in force and that it had not been abandoned or breached. Since the contract was silent as to the term for the employment of the respondent, either to fish or haul supplies for the appellants, it could be terminated only upon notice. Section 1999 of the Civil Code provides: "An employment having no specified term, may be terminated at the will of either party, *on notice to the other.*"

No notice terminating this employment was ever given to the respondent. The validity of the contract was recognized by appellants as late as the season of 1922, by orally employing the respondent to haul supplies and by agreeing to credit a portion of his earnings to the boat account.

The appellants contend that the court erroneously rendered judgment against the Van Camp Sea Food Company, Inc., for the reason that there was no privity of contract between it and the respondent. It is true that the contract which forms the basis of the obligation resulting in the judgment was in fact executed by the predecessor of the "Inc." Company only, and that no credit was given respondent on this contract after the incorporation was accomplished, in July, 1923. When this change in the organization occurred, however, the new corporation purchased and took over all the business and properties of the original company, including the boat which is involved in this suit; the president, if not the entire organization, remained the same. The record indicates that the transformation of the original company into the corporation was a mere change of form for the convenience of business and that the blood, bone and sinew of the organization remained the same. As the court says in *Blanc* v. *Paymaster Mining Co.,* 95 Cal. 524 [29 Am. St. Rep. 149, 30 Pac. 765]: "Equity cannot permit the owners of one corporation to organize another, and transfer from the former to the latter all the corporate property, without paying all the corporate debts. . . . A mere change of name cannot avoid obligations. The new corporation took all the property of the old, went forward with its

business, . . . was in short the old corporation, and now seeks to escape the obligations of the old. . . . The old corporation and its property were liable to the demands of the plaintiff. The new corporation must respond to the extent of the property acquired.''

Having taken over the business and the property of the original company, including the boat in question, which is subsequently sold, we are of the opinion that the corporation also assumed liability for the breach of this contract. In 4 Cook on Corporations, sixth edition, page 3295, section 897, it is said: ''This new consolidated corporation usually succeeds to all the obligations of the old companies.''

Likewise, in 7 Ruling Case Law, page 184, section 157, it is said: ''The consolidated corporation is answerable for the performance of executory contracts entered into by the consolidated corporations, and by which they were bound at the time of the consolidation, such as a contract to convey land.''

The same principle applies when one company is merged into a corporation which takes title and possession of all the property and the business of the former organization. (*Stanford Hotel Co.* v. *M. Schwind Co.*, 180 Cal. 348 [181 Pac. 780].)

The judgment is affirmed.

Plummer, J., and Finch, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 14, 1929, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 11, 1929.

All the Justices present concurred.