[Civ. No. 4826.   Fourth Dist.   July 26, 1954.]

LAWRENCE D. CANEPA, Plaintiff and Appellant, v. SUN PACIFIC, INC. (a Corporation), Defendant and Appellant.

Holt & Macomber and Jack L. Oatman for Plaintiff and Appellant.

Luce, Forward, Kunzel & Scripps for Defendant and Appellant.

GRIFFIN, J.—Plaintiff's complaint entitled "Action in Assumpsit" alleges that on February 20, 1952, defendant was indebted to plaintiff in the sum of $20,235.84, for monies received by defendant for use of plaintiff, and that defendant promised plaintiff to pay him said sum of money on request. Defendant denied generally the allegations of the complaint. After trial by the court judgment was entered for plaintiff for $10,479.80 and costs, plus interest from December 24, 1951, amounting to $882.31.

Plaintiff appealed on the judgment roll alone from that portion of the judgment allowing him only $10,479.80, contending that from the pleadings and from the facts found it must be held that plaintiff was entitled to the return of the entire amount paid on a 35 per cent interest in a certain fishing vessel owned by defendant and being purchased by plaintiff under a written agreement.

Defendant's contentions on appeal from the judgment are (1) that the evidence is not sufficient to show a breach of contract by the defendant nor to support a judgment for damages based thereon; nor (2) to support a finding of rescission of the agreement or conversion which would support a judgment based upon those theories and upon the pleadings indicated.

The evidence shows that in August, 1943, defendant purchased a fishing vessel for $132,852.20. On September 30, 1943, plaintiff, an experienced skipper, entered into a written agreement with defendant to purchase a 25 per cent interest therein for one-fourth of its cost, payable $6,000

down and the balance payable from a one-half share of plaintiff's earnings as master, and 25 per cent "of the owner's share of the earnings of the vessel." On November 23, 1945, for $100, plaintiff purchased an additional 10 per cent interest therein, and thereafter he was credited upon the purchase price with 35 per cent of the net earnings of the vessel. The agreement also provided that the obligation of the defendant to complete the sale was contingent upon plaintiff remaining on the vessel as a master thereof, and devoting his best skill and efforts toward fishing for said vessel; that if, through willful incapacity on the part of the buyer or his voluntary withdrawal from such position, he shall not remain as master of said vessel until such purchase price is fully paid, the seller may, at its option, cancel the agreement by refunding to the buyer the payments which were received, together with the proceeds from his half share as master, but that in that event any sums which have been credited out of the boat's earnings would revert to the owner of the vessel; that owner should demand and receive for fish caught, the ceiling price, or in the absence of a ceiling, the prevailing market price.

By agreement on September 30, 1943, plaintiff paid only $3,000 on the original purchase price instead of $6,000. From 1943 through November 1951, the vessel operated out of San Diego in Lower California waters with plaintiff as skipper. Money was made during certain seasons and losses occurred in others. There was paid on the purchase price of plaintiff's interest $2,911.42, during this period and there was credited to plaintiff on account of the purchase price, from plaintiff's share of the 35 per cent of the earnings of the vessel, $13,324.42. As of January 23, 1952, there was a balance due defendant of $16,079.87. During the last three years of operation out of San Diego the vessel suffered a total net loss, excluding depreciation, of $16,120.39. During these years plaintiff advanced no money for its operation. The catch was sold to defendant at the prevailing price of about $320 per ton.

In November 1951, because of these losses, defendant suggested to plaintiff that the vessel be sent to Peru and there fish for a company in which defendant was interested. Plaintiff refused to go unless some definite agreement was made in reference to the price of fish and other satisfactory arrangements made with plaintiff. None was made. Plaintiff suggested they sell the vessel and it was offered for sale by plaintiff for $75,000, but no buyers were obtained. In that

same month plaintiff left on a sea voyage on another vessel and remained away until April 1952. The vessel here in question was at all times registered in the name of defendant and plaintiff's interest therein was not to be registered until his contract was paid in full. On December 24, 1951, defendant entered into an agreement to lease the vessel for three years, and to deliver the catch of the vessel to a subsidiary corporation of defendant in Peru, and the vessel departed on January 23, 1952, for those waters without plaintiff or his apparent consent or knowledge. There was no prevailing fixed ceiling price of fish in those waters, but the price obtained averaged about $70 per ton. The vessel operated there and after several months it was badly damaged and was left there. From November 30, 1951, to November 30, 1952, the net loss, excluding depreciation, was $4,833.53.

Plaintiff, on July 9, 1952, filed this action. The court found generally in accordance with the facts related, and particularly found that plaintiff had fully performed his part of the agreement and that defendant, on December 24, 1951, materially and substantially breached its agreement with plaintiff when it contracted to lease the vessel to its subsidiary in Peru without plaintiff's knowledge and consent, and that such breach constituted a ''conversion of the vessel by defendant'' and defendant ''breached its agreement'' with plaintiff on January 23, 1952, when it took the vessel to Peru; that the books of defendant company show a total credit payment of $20,235.84 on December 24, 1951, to plaintiff's account as being applied on his contract of purchase.

It then found that as of January 23, 1952, the day the vessel left San Diego for Peru, its fair market value was $87,500; that it had certain prepaid insurance and other assets amounting to $5,021.50, and liabilities or debts owing against it for $16,636.74; that plaintiff is chargeable with 35 per cent thereof or $5,822.86; and that the balance due on the contract owing by plaintiff was $16,079.87; that the market value of plaintiff's 35 per cent interest in the vessel on December 24, 1951, after deducting and adding these items was $10,479.80. Judgment was entered accordingly.

The complaint alleges a money had and received cause of action. Upon what theory the case was tried is problematical. Apparently, one theory was that there had been a conversion of plaintiff's interest in the vessel and accordingly the trial judge applied section 3336 of the Civil Code (the value of the

property at the time of the conversion) as the true measure of damages. In portions of the trial judge's written opinion filed herein, it is stated that plaintiff "filed this action in assumpsit on the theory that the defendant had *breached the contract* between the parties and had *converted* said vessel to its own use"; that the contract between plaintiff and defendant "has been *breached* by act of the defendant in taking said boat to Peru"; that the act of defendant "in leasing the *entire* vessel to a subsidiary for three years, in my opinion, shows an absolute conversion of said vessel by the defendant"; (italics ours) that "having dealt with the" vessel "and disregarding the rights and interests of Canepa . . . would be a conversion"; and "that some jurisdictions hold that assumpsit does not lie against the defendant unless a sale of the chattel has been made by the defendant. This is not the rule in California. See 98 A.L.R. 261 under heading 'Doctrine Permitting Recovery,' and cases therein cited"; that "the contract was completely breached by the defendant by its taking the boat and dealing with it as its own, and defendant now has it in a foreign jurisdiction beyond the reach of the plaintiff"; that "plaintiff has nothing in his possession to give back. Defendant has it, is using it, and has leased it out under its own terms and conditions and for its own benefit without counseling with the plaintiff"; that "having held that the contract between plaintiff and defendant has been breached by defendant and that defendant has converted the boat to its own use against the wishes of the plaintiff, it then becomes necessary to determine plaintiff's damage." He then applied section 3336 of the Civil Code and fixed the damage as indicated.

Plaintiff concedes that if there was no contractual relationship between the parties and the defendant converted the vessel, then the court might have been correct in applying the tort measure of damages if the pleadings permitted, but since there was a contractual relationship between them which involved the property in question, and since the case was tried upon the theory of breach of contract, no conversion was established and the court was bound, under the holding in *Anderson* v. *Van Camp Sea Food Co., Inc.*, 98 Cal.App. 787 [277 P. 1099], to return the entire purchase money to the plaintiff upon the finding that the defendant breached the contract. It is further argued that the mere fact that the act which constituted the breach of contract also constituted a conversion of the vessel did not justify the court in applying a tort

measure of damage. The Anderson case was an action to recover the money paid on the purchase price.

Generally, the measure of damage for breach of contract is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby. (Civ. Code, § 3300.) If the pleadings permitted and the case was tried on the theory of recovery of damages for breach of contract the amount found due might be supported by the evidence.

It is an established principle of law that under certain circumstances, a person having an action in tort against a wrongdoer may elect to waive the tort and proceed instead upon an implied contract, and where one person derives a benefit from the commission of a tort against the property of another, the law will, at the election of the person injured, imply a contract on the part of the tort feasor to pay a just remuneration for the damage sustained as a consequence of the wrong, and on this contract general assumpsit lies. (5 Cal. Jur.2d p. 532, § 6; *Fratt* v. *Clark,* 12 Cal. 89; 2 Greenleaf on Evidence, § 108.)

It was stated in *Philpott* v. *Superior Court,* 1 Cal.2d 512, 525 [36 P.2d 635, 95 A.L.R. 990], that a plaintiff may not only waive the tort and sue in *indebitatus assumpsit* for the money consideration parted with but, where personal goods have been converted, he may also have the common law writ (*quantum valebat*) for the value of the goods so converted. (See also *McCall* v. *Superior Court,* 1 Cal.2d 527 [36 P.2d 642, 95 A.L.R. 1019].)

In *Glantz* v. *Freedman,* 100 Cal.App. 611 [280 P. 704], it was held that a principal's remedies against a factor for unauthorized dealing with fruits include an action for damages for breach of contract or in tort for conversion, or, by waiving the tort, assumpsit for *goods sold and delivered,* in which case his action is on a contract implied by law arising upon a waiver of tort, citing 3 Cal.Jur. 377, 380. In that case it was said, at page 614:

" 'In many jurisdictions this doctrine is limited to cases where the wrongdoer has sold the property or otherwise converted it into money, in which event the plaintiff may maintain an action for the proceeds. (4 Cyc. 332.) In this state, however, as in a number of others, a broader rule enables one whose goods are wrongfully taken and used by another to sue in *assumpsit* for their value as for *goods sold and delivered.*' " (Italics ours), quoting from *Bechtel* v. *Chase,* 156 Cal. 707, 711 [106 P. 81], where the rule is reiterated with the

added statement: "The very basis of the 'waiver of tort' is that plaintiff consents to the taking of his property and affirms the act of the wrongdoer. He treats it as a sale, and recovers the value due him under an implied contract of sale."

█ Where the wrongdoer has sold the property and the action is in the form of *money had and received,* recovery is limited to the proceeds of the sale. (*French* v. *Robbins,* 172 Cal. 670 [158 P. 188]; 5 Cal.Jur.2d 534, § 7.) It is further held that the measure of the plaintiff's recovery upon waiver of conversion and suit in assumpsit depends upon the count upon which he relies. If he proceeds on the theory of a *sale* to the wrongdoer the value of the property may be recovered. On the other hand, where the defendant has sold the converted property and the plaintiff adopts the count for *money had and received* the amount of recovery is limited to the proceeds. If that amount is not ascertainable this form of an action cannot be maintained. (*French* v. *Robbins, supra;* 5 Cal. Jur.2d 535, § 8, and cases cited.)

It therefore becomes apparent that the proper choice of counts has a bearing on the amount of recovery in a given situation. Here, plaintiff did not plead the common count of *goods sold and delivered* but relied solely upon the common count of *money had and received* which contemplates that defendant had money in his possession which rightfully belonged to plaintiff. Plaintiff's interest in the boat in question was not sold and there were no proceeds of any sale in the hands of defendant which ·plaintiff could possibly recover.

█ The general rule is that the action for money had and received lies in all cases where one person has in his possession *money* which in equity and good conscience he ought to pay over to another. (5 Cal.Jur.2d p. 548, § 16; *Kreutz* v. *Livingston,* 15 Cal. 344; *Mains* v. *City Title Ins. Co.,* 34 Cal. 2d 580 [212 P.2d 873].) █ The action for *money had and received* lies only as to money or as to some specific article of property agreed to be treated as money or which has been actually or presumably converted into money. (*Ehrman* v. *Rosenthal,* 117 Cal. 491 [49 P. 460]; 5 Cal.Jur.2d 551, § 18.)

██ For the reason that parties are bound by their agreement and there is therefore no ground for implying a promise when there is an express contract, the general rule is that where an action is based upon a special contract, a common count will not support the action, but the plaintiff must declare specially on the contract. (*O'Connor* v. *Dingley,*

26 Cal. 11.; *Roche* v. *Baldwin,* 135 Cal. 522 [65 P. 459, 67 P. 903]; 5 Cal.Jur.2d 537, § 9.)

Looking to the contract which plaintiff claims defendant breached, we find it provides that in case of plaintiff's voluntary withdrawal as master of the vessel before the purchase price is paid, the seller may, at his option, cancel the agreement by refunding to the buyer each of the $2,000 payments received plus the proceeds from his one-half share as master, but such sums as were created out of the boat's earnings should revert to the owner of the vessel and the obligation of the seller to complete the sale is contingent upon plaintiff remaining on the vessel as master thereof and devoting his best skill and efforts to fishing for said vessel. Apparently it contains no provision respecting the rights of the parties if defendant breached its part of the contract. There is no finding of mutual rescission of the contract or such other exception to the general rule which would support a cause of action on a common count *of money had and received.* These exceptions are noted in *Lubeck's Inv. Co.* v. *Voris,* 68 Cal. App. 652 [229 P. 1025]; *Fontaine* v. *Lacassie,* 36 Cal.App. 175 [171 P. 812]; and in 5 Cal.Jur.2d 556, section 22, et seq., as well as in *Kreutz* v. *Livingston,* 15 Cal. 344; *Philpott* v. *Superior Court,* 1 Cal.2d 512 [36 P.2d 635, 95 A.L.R. 990]; *San Diego Constr. Co.* v. *Mannix,* 175 Cal. 548, 553 [166 P. 325]; and 5 Cal.Jur.2d 548, section 16.

Apparently no effort was made by plaintiff to effect a rescission under section 1691 of the Civil Code. (*Gates* v. *McLean,* 70 Cal. 42, 50 [11 P. 489]; *Dunger* v. *Whitney,* 92 Cal.App. 216, 223 [267 P. 933].)

██ Accordingly, *under the pleadings,* the application of section 3336 of the Civil Code, *supra,* in respect to *damages for conversion* was erroneous and plaintiff must recover, if at all, from the facts found, on the theory that defendant is in possession of *money* belonging to plaintiff as the result of a breach of contract which makes no provision as to the amount of recovery under such circumstances, and which sum defendant in good conscience ought to pay to plaintiff. (*Willett & Burr* v. *Alpert,* 181 Cal. 652, 661 [185 P. 976]; *Phelps* v. *Brown,* 95 Cal. 572, 576 [30 P. 774]; *Bray* v. *Lowery,* 163 Cal. 256 [124 P. 1004]; *Joshua Tree T. Co.* v. *Joshua Tree L. Co.,* 100 Cal.App.2d 590, 596 [224 P.2d 85].)

██ It is a general principle of law that where there is a rescission the party rescinding cannot keep the profits received from the property he is returning to the vendor. (25

Cal.Jur. 723, § 194; *Dunger* v. *Whitney*, 92 Cal.App. 216, 223 [267 P. 933]; *Gates* v. *McLean*, 70 Cal. 42, 50 [11 P. 489]; 36 Cal.L.Rev. 607; *Murdock* v. *Fisher Finance Corp.*, 79 Cal.App. 787, 791 [251 P. 319].)

While it is true that the trial court's written opinion constitutes no part of the judgment roll and does not serve the function of finding, yet where any possible doubt exists it may be referred to for explaining the judge's decision. (Vol. 3, Am.Jur., p. 462, § 897.) When the court's memorandum opinion is referred to in the instant case there is no doubt that the court erroneously applied a tort measure of damages under section 3336 of the Civil Code.

The action should be retried with the issues clarified, and with findings responsive to the issues actually presented.

Judgment reversed. Each party to bear own costs on appeal.

Barnard, P. J., and Mussell, J., concurred.

A petition for a rehearing was denied August 18, 1954.