[No. 12160.   Department One.   December 14, 1914.]

## B. T. Woods, Junior, *Appellant*, v. Insurance Company of Pennsylvania, *Respondent*.[1]

Insurance — Fire Insurance — Policy — Misrepresentations of Assured—Deceit—Evidence—Sufficiency.   Findings that a fire insurance policy was obtained through deceit and misrepresentations of a material fact are sustained by the evidence, where it appears that the property insured was subject to a chattel mortgage, that in applying for the policy, the insured signed an application stating that there were no incumbrances, but had the policy issue payable to L. Co. as its interest may appear, representing to the agent that L. Co. was merely a general creditor.

Same—Deceit—Notice of—Payable to Appointee.   In such case, the fact that the policy was issued payable to L. Co. as its interest may appear, is not sufficient to notify the insurance company or put it on inquiry as to the fact that L. Co. was a mortgagee, since the expression merely means that L. Co. was made an appointee to receive the insurance, and does not point with conclusiveness that it was a mortgagee or had any insurable interest in the property.

Same—Fire Insurance—Avoidance of Policy—"Deceit"—"Breach of Warranty"—Statutory Provisions.   Under 3 Rem. & Bal. Code, § 6059-34, providing that no misrepresentations or warranty made in the negotiations of a contract of insurance shall be deemed material or avoid the policy, unless made with intent to deceive, and further providing that breach of warranty shall not avoid the policy unless the breach exists at the time of the loss, a policy of insurance is avoided where it was obtained by false representations in the negotiations preceding and inducing its issuance, to the effect that the property was not incumbered by mortgage, made with intent to deceive; since it is not a case of breach of warranty within the latter part of said section.

Appeal from a judgment of the superior court for King county, Dykeman, J., entered March 11, 1914, upon findings in favor of the defendant, in an action on a fire insurance policy.   Affirmed.

*Leopold M. Stern*, for appellant.

*Granger & Clarke*, for respondent.

[1]Reported in 144 Pac. 650.

PARKER, J.—This is an action to recover upon a fire insurance policy for loss by fire of the stock of goods covered thereby, the plaintiff being the assignee of the insured. A trial before the court without a jury resulted in findings and judgment in favor of the defendant, from which the plaintiff has appealed. The theory upon which the trial court denied recovery upon the policy is that the National Outfitting Company, the insured, falsely and fraudulently, with intent to deceive defendant, represented to its agent that the stock of goods to be insured was not encumbered by a chattel mortgage, when in fact it was so encumbered, thus inducing the defendant to issue the policy, which it would not have done under any circumstances had it been truly informed as to the existence of the chattel mortgage incumbrance. This is also the principal ground of respondent's defense.

The National Outfitting Company is a copartnership, composed of Joseph Paul and Samuel Paul, engaged in the retail ladies' cloak and suit business, with its principal place of business in Seattle. In June, 1912, the National Outfitting Company duly executed a chattel mortgage upon its stock of goods to secure the payment of a large sum of money due by it to S. L. Leszynsky & Company, a corporation, engaged in the wholesale ladies' cloak and suit business, in Seattle. This chattel mortgage was unsatisfied and remained in full force and effect until long after the incurring of the fire loss here involved. About the first of February, 1913, Samuel Paul, one of the partners, took a quantity of the goods of the National Outfitting Company to the town of Ravensdale, a short distance from Seattle, for the purpose of selling them. To that end, he placed the goods on sale in a store room, establishing a temporary branch store of the National Outfitting Company. Soon thereafter, he entered into negotiations with W. C. Sylvester, the local agent of respondent, looking to the issuance of a policy of insurance to the National Outfitting Company upon these goods. These negotiations resulted in the issuance of the

policy here involved, on February 5, 1913, insuring the goods for the sum of $2,000. This policy contains, among other provisions, the following: "Loss, if any, payable to S. L. Leszynsky & Company as its interest may appear." This clause is typewritten in the policy, and was inserted at the request of the National Outfitting Company. In the printed portion of the policy, there is contained, among other provisions, the following:

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void . . . if the subject of insurance be personal property and be or become incumbered by a chattel mortgage."

About the hour of two o'clock in the morning of February 10, 1913, a fire occurred, which resulted in the total loss of the goods, which were then of the value of $2,700. The cause of the fire is unknown. Thereafter, the National Outfitting Company tendered proof of loss to respondent in usual form, and demanded payment in the full sum of $2,000. This proof of loss is signed and sworn to by both Joseph and Samuel Paul, the partners constituting the National Outfitting Company, and contains a statement relative to incumbrances upon the property as follows: "(4) All incumbrances thereon: None. S. L. Leszynsky & Co. have a mortgage on our Seattle property only."

The premium to be paid upon this policy, according to its terms, has never been paid, though it was tendered to respondent after the fire. The National Outfitting Company assigned their rights under the policy to appellant, after the fire and before the commencement of this action. S. L. Leszynsky & Company no longer have any interest in the property as mortgagee or otherwise, though their interest continued under the chattel mortgage long after the occurrence of the fire which destroyed the goods. So far, we have stated facts as to which there can be no serious controversy under the evidence.

Touching the question of representations made by the National Outfitting Company to the agent of respondent, as to the property being unincumbered by chattel mortgage and respondents being thereby induced to enter into this contract of insurance when otherwise it would not have done so, the trial court found that, when negotiations were pending looking to the issuance of the policy,

"The assured National Outfitting Company with intent to deceive said defendant, stated and represented to said agent Sylvester that assured desired that the policy of insurance be written covering the merchandise thereafter insured with a loss payable clause to S. L. Leszynsky & Company as their interest may appear. And upon being questioned by the agent Sylvester as to whether the interest of S. L. Leszynsky & Company was that of a mortgagee under a chattel mortgage, that the assured, with intent to deceive this defendant, stated and represented that there was no chattel mortgage covering the property and that S. L. Leszynsky & Company were merely creditors of said National Outfitting Company. . . . That the defendant Insurance Company at the time of the issuance of the policy aforesaid had no knowledge of the fact that there was a chattel mortgage upon the insured property; that their said agents relied upon the aforesaid representations made by the assured and believed the same to be true, and that had said company and its agents known that there was a chattel mortgage in existence covering said insured property, the said defendant company would not have issued the aforesaid policy of insurance or any other, covering said property."

These findings, it is contended by counsel for appellant, are erroneous in that they are not warranted by the evidence. The oral evidence given by witnesses upon the trial is in sharp conflict as to the making of these representations. The testimony of respondent's witnesses is to the effect that these representations were made by at least one of the partners, in response to inquiries made by respondent's agent as to the property being incumbered by chattel mortgage, and that the relation of S. L. Leszynsky & Company to the National Outfitting Company was that of a simple creditor.

The testimony of appellant's witnesses is directly to the con-
trary and to the effect that respondent's agent was informed
of the existence of the chattel mortgage before the policy
was issued.    Looking alone to this conflicting testimony,
viewing it as we must simply in cold typewriting, rather than
with the aid of the presence of the witnesses, it would seem to
preponderate in favor of appellant's contentions; though, if
we had nothing more to guide us, we would entertain grave
doubts as to the propriety of our interfering with the find-
ings of the trial court upon these questions, in view of its
opportunity of seeing and hearing the witnesses testifying.
However, when we look beyond this conflicting oral testimony
and bring to our aid other facts appearing in the record be-
fore us, a situation is presented which convinces us that we
should not reach different conclusions upon these questions
of fact than that reached by the trial court.    We have no-
ticed that the policy is, by its terms, made payable to S. L.
Leszynsky & Company "as its interest may appear," and is
silent as to what that interest is; that the policy also con-
tains a clause which in terms renders it void if the property
"be or become incumbered by a chattel mortgage;" and that
the proof of loss signed and sworn to by both partners of
the National Outfitting Company made after the occurrence
of the fire states absolutely, in substance, that there was no
chattel mortgage upon this property at that time, when in
fact this mortgage had been at all times since prior to the
issuance of the policy, and was then, an incumbrance upon
the property in full force and effect.    We also note in this
connection that respondent's agent testified that personal
property incumbered by chattel mortgage "is absolutely on
the prohibitive list," which testimony is uncontradicted.

Counsel for appellant insists that the clause of the policy
making "loss if any payable to S. L. Leszynsky & Company,
as its interest may appear" is, in substance, such a conclu-
sive statement of its interest being that of a mortgagee, that
the trial court was not warranted in finding a want of

knowledge on the part of respondent of the existence of the chattel mortgage. This contention rests upon the theory that no interest in the property by S. L. Leszynsky & Company, other than a lienable interest, would constitute an insurable interest; and there being no lienable interest in personal property other than by chattel mortgage; and it being conceded they were not interested as owners. The weakness of this contention lies in the fact that we are not here concerned with the question of S. L. Leszynsky & Company having an insurable interest in this property. It was not the insured but only an appointee of the insured, the National Outfitting Company, entitling it to receive the proceeds of the policy in case of loss "as its interest may appear." The nature of the interest of S. L. Leszynsky & Company is well illustrated by a line of decisions of the courts involving the right of such an appointee to sue upon the policy. In *Donaldson v. Sun Mut. Ins. Co.*, 95 Tenn. 280, 32 S. W. 251, there was involved a policy wherein the loss was made payable to a creditor of the insured "as his interest may appear at that time." Discussing the nature of his interest, which became a question incident to his right to sue upon the policy after loss, Judge McAllister, speaking for the court, said:

"We are of the opinion that the clause 'as his interest may appear at the time' does not refer to the interest of the appointee in the property, but to his interest as a creditor, or otherwise, in the Kimball Town Company. The interest insured in the property was the interest of the Kimball Town Company. *Hayas v. Ferguson*, 15 Lea, 1; *Cone v. Ins. Co.*, 60 N. Y. 621; *Central Ins. Co. v. Holman*, 92 Ill. 154. If the interest of Donaldson, as receiver of the coal and iron company, in this property had been insured, it would, of course, have been necessary to show that he had an insurable interest, but it is not necessary that the appointee to whom the policy is made payable should have an insurable interest in the property insured. The clause 'loss, if any, payable to Donaldson as his interest may appear at that time,' was tantamount to an assignment of the policy by the Kimball

Town Co., with the consent of the insurance company, to Donaldson as receiver."

In *Scania Ins. Co. v. Johnson*, 22 Colo. 476, 45 Pac. 431, there was involved a clause in a policy in the exact words which we have in this policy. Speaking of the nature of the appointee's interest, Justice Campbell, speaking for the court, said:

"The theory of the plaintiff, which seems to have been adopted by the trial court, was that the words 'loss, if any, payable to Mrs. H. Johnson, as her interest may appear,' constituted the contract of insurance one directly between the company and the mortgagee, by which her (the mortgagee's) separate interest in the property, and not that of the mortgagor, was insured. But this language has not such effect. It was the mortgagor's property and her interest therein which were insured, and the effect of the language quoted was merely an appointment of Mrs. Johnson to receive the amount of any loss that might occur. Any act of the mortgagor in violation of the terms of the policy against a sale thereof would defeat, not only the right of the mortgagor to a recovery, but also a recovery by the mortgagee."

In *Delaware Ins. Co. v. Greer*, 120 Fed. 916, 61 L. R. A. 137, Judge Sanborn, speaking for the circuit court of appeals, said:

"The true construction of the clause 'loss, if any, payable to ————, mortgagee, as his interest may appear,' or of words of similar import, when attached to policies of fire insurance is, and has been for more than 40 years, that the mortgagee is thereby made the simple appointee of the mortgagor, and that his indemnity is at the risk of the acts and omissions of the latter which would avoid, terminate, or affect the mortgagor's insurance under the original policy."

See *American Cereal Co. v. Western Assur. Co.*, 148 Fed. 77, and authorities there cited. According to the doctrine of these authorities, S. L. Leszynsky & Company's interest was not pretended to be insured by this policy. Assuming that its interest as a simple creditor could not have been insured, and that its interest as mortgagee could have been

insured, such fact would have no bearing upon the validity of making it an appointee to receive payment in case of loss "as its interest may appear." The force of such a provision is not dependent upon the appointee's interest in the insured property. It seems to us that this provision of the policy does not point with any degree of conclusiveness to the fact that S. L. Leszynsky & Company's interest was an insurable interest, or the interest of a mortgagee. We note, that there is testimony in the record, given by respondent's general agent, to the effect that it is not uncommon to in this manner make a general unsecured creditor of the insured the appointee to receive payment in case of loss as his interest may appear. If this policy used the word "mortgagee" in connection with "as its interest may appear," counsel's contention might be considered well founded.

Counsel for appellant invoke the provisions of § 34 of our insurance code, which reads as follows:

"No oral or written misrepresentation or warranty made in the negotiation of a contract or policy of insurance, by the assured or in his behalf, shall be deemed material or defeat or avoid the policy or prevent it attaching, unless such misrepresentation or warranty is made with the intent to deceive. The breach of a warranty or condition in any contract or policy of insurance shall not avoid the policy nor avail the insurer to avoid liability unless such breach shall exist at the time of the loss and contribute to the loss; anything in the policy or contract of insurance to the contrary notwithstanding. In case a loss occurs while a breach of warranty exists, if it contribute to the loss; the insured shall only be entitled to recover the amount of insurance the premium paid would purchase at the rate that would be charged without the warranty. This section shall be liberally construed." Laws of 1911, p. 197, § 34 (3 Rem. & Bal. Code, § 6059-34).

This section refers to three conditions which may affect the validity of the policy or in a measure control the rights of the insured and the liability of the insurer under the policy. First, representations made in negotiations before issuance of the policy with intent to deceive the insurer;

second, breaches of warranty or conditions recited in the policy; and, third, the right of the insured to have the policy considered valid, to the extent of the amount of insurance the premium paid would purchase in the absence of a breached warranty recited in the policy. We think the first condition mentioned in this section is the only one controlling in this case. The learned trial court found, and we are constrained to agree with him, in the light of all the evidence, that the misrepresentations were in fact made in this case with intent to deceive respondent, in negotiations prior to the issuance of the policy, and induced respondent to enter into the insurance contract which otherwise it would not have done under any circumstances. This is not, in its final analysis, a question of breach of warranty or condition recited in the policy, but is a question of deceit practiced before there was any policy reciting warranties or conditions of the contract of insurance. The third condition mentioned in this section can not apply here for the same reason.

We conclude that the judgment of the learned trial court must be affirmed. It is so ordered.

CROW, C. J., GOSE, CHADWICK, and MORRIS, JJ., concur.