[Civ. No. 1140. Fourth Appellate District.—July 2, 1934.]

HAYWARD LUMBER & INVESTMENT COMPANY (a Corporation), Respondent, v. ERIC LYDERS, Appellant.

518

Glassford & Smith and G. H. Van Harvey for Appellant.

LeRoy B. Lorenz for Respondent.

HAINES, J., *pro tem.*—This action was commenced by the respondent Hayward Lumber and Investment Company, as plaintiff, against appellant Eric Lyders, one H. N. Stalnaker and others, as defendants. The complaint embraced two counts, one alleging a materialman's lien for $1853.72 on a certain structure and the real property on which it was situate belonging to appellant Lyders in Imperial County, and the other seeking a recovery of the same amount on a *quantum valebat* for materials alleged to have been furnished to the said Stalnaker and said Lyders upon their orders. Lyders answered admitting his ownership of the land but denying everything else alleged and later filed a supplemental answer and counterclaim alleging that pending the action the respondent company had without his knowledge insured for $2,000 the structure, referred to in its complaint, with the American Insurance Company of Newark, New Jersey, under a policy which made any loss payable to appellant and to respondent "under the provisions of the said policy commonly known as a mortgage clause", though respondent company had never in fact any insurable interest in the structure; that the structure had burned and that

respondent company had made proof of loss and collected the $2,000 for which it had not accounted to appellant. In this pleading appellant alleges that he ratifies respondent's action in taking out the insurance and demands that respondent pay him the proceeds thereof.

Upon the trial the court found that respondent had abandoned the first count of its complaint and on the remaining issues found that appellant through Stalnaker as his agent some time prior to March 5, 1928, commenced the erection on his land, described in the complaint, of a' ranch-house which he completed on or about October 1, 1928; that on or about March 5, 1928, appellant contracted with respondent corporation to furnish building materials for said structure, agreeing to pay the current market price and reasonable value thereof; that the said materials were furnished accordingly and that their current market price and reasonable value was $1853.72, all of which became due from appellant to respondent on or before October 10, 1928; that since the accrual of this obligation appellant several times and for valuable considerations promised to pay the same but has paid neither the whole nor any part thereof; that the building was wholly destroyed by fire on or about August 10, 1930, which was the cause of respondent's abandonment of its claim of lien but that respondent continues to rely on its contractual right to recover from appellant the reasonable value of the materials furnished.

The court found that on October 15, 1928, respondent, without appellant's knowledge, procured said insurance in favor of appellant as owner of the property and that there were attached to the policy and made a part thereof certain indorsements which the findings set out *verbatim*. The court found also that after the destruction of the building respondent informed appellant of the existence of the policy and requested him to make proof of loss thereunder, but that appellant refused to do so and waived all rights under the policy, whereupon respondent made proof of loss thereunder and collected the $2,000 from the American Insurance Company. Then follows a finding, the meaning of which is not altogether clear, in the words following:

"That thereafter, and prior to the trial of this cause, plaintiff assigned to said American Insurance Company its claim against the defendant to such extent as said or any

claim may have existed in favor of said American Insurance Company as against said defendant, and that the said American Insurance Company thereafter, and prior to the trial of this action, reassigned the said claim back to the plaintiff herein, and that the said plaintiff is now the owner and holder thereof, if any claim there be; that said plaintiff elected not to rely upon said claim, or right of claim, if any there be, in this or any future action."

The court further found that respondent had an insurable interest in the structure when the policy was taken out; that appellant had made no valid ratification of respondent's action in taking out the policy; that no money had been had or received by respondent to appellant's use; that appellant was entitled to recover nothing from respondent but on the contrary respondent corporation was entitled to judgment against appellant for $1852.33 (apparently intended to be $1853.72) with interest. Judgment was entered accordingly and this appeal followed.

The two questions to be decided are, first, whether the evidence is sufficient to justify respondent's recovery on the *quantum valebat* when taken in connection with appellant's promise to pay the claim, and, second, whether the action of the trial court in respect of the insurance was right.

At all of the times here involved appellant Lyders resided in San Francisco. His Imperial County ranch was, during 1928, cultivated by one Stalnaker, who, at the outset, lived in Yuma. According to appellant, in January, 1928, Stalnaker wrote him that there was on the ranch some old lumber and asked him for leave to move it to another part of the land and build a shack with it, claiming that he could thereby save rent. Appellant also says that Stalnaker asked him for some help in buying materials and in building the structure which he declined to furnish. The record, however, shows that under date of February 2, 1928, he wrote Stalnaker saying, *inter alia*, "I agree with you that it would be well to build a house on the land in which I will help provided it is not going to run into too much money." Appellant says that in January or February, 1928, when he was on another place that he had near Welton (Arizona), an automobile drove up containing two men and two women, that someone handed him a card and claimed to represent the Hayward Lumber and Investment Company "and asked

me if I didn't want to build a house there and I said 'No' and more likely I added to it I might some time build a house on the other piece of land I had on the other side of the Colorado River, and that is all that was said''. He says that he knew nothing more about Stalnaker's building activities, except possibly to hear that he had gone on to build, as he had permission to do, with the old lumber, until the fifth or sixth of October, 1928, when for the first time he learned that Stalnaker had erected on his property an elaborate house and gotten materials for the same from respondent, for which Stalnaker claimed largely to have paid though he admitted still owing respondent. Appellant thereupon returned to San Francisco and on October 12, 1928, wrote respondent that he had discovered that Stalnaker had contrary to directions commenced the erection of a house on the land and was indebted to respondent to the extent of about $1200 for materials purchased, adding, ''I am at a loss to understand how you came to sell such a quantity of material to Mr. Stalnaker and would like you to give me a full account.'' Appellant does not dispute having subsequently promised respondent to pay the account (less ten per cent), even though he claims that it was contracted without his authority, as he did not want to have a building into which respondent's materials had gone, without paying for them, but claims that these promises were conditional on respondent's not pressing its claim until he was able to get rid of certain attachments levied on his property in some litigation brought against him by the Danish government, which had not in fact been dissolved when the instant case was tried. He further claims that these promises made after the building had been erected were without consideration.

Stalnaker, though made a defendant, was apparently never served and his whereabouts is said to be unknown. At all events he was not present to testify at the trial. Appellant claimed to have a file of correspondence with him which was by some error and accident not brought down from San Francisco nor made available at the trial.

As against appellant's account of what had occurred, one Becker, who was respondent's yard superintendent and auditor, testified that appellant called in January or February, 1928, at the Yuma office. Becker says that in the

absence of the manager he waited on appellant, that "Mr. Lyders told me he had in mind the possible building of a house on the ranch and wanted some idea as to cost. I told him approximately what the cost would be". Then, according to Becker, Lyders suggested that he might also build a cabin on the Welton property. He quotes appellant further as saying that he had a man on the "ranch" (by which we take the reference to be to the Imperial County property) and as asking whether he could arrange to have his man get or order the materials and go ahead with the job. Next day, according to Becker, he happened to be at Welton and with respondent's Welton manager drove out to the near-by Lyders "experiment station" where another talk about building occurred "and before we left Mr. Lyders told me he would not go ahead with any building on the Welton place but that he had decided he would go ahead on the Bard (i. e., the Imperial county) ranch; that his man was not ready to start at the time but would be in a position to start within a few weeks".

One Simpkins, who had in 1928 been manager of respondent's Yuma office, testified that he had opened the account in Lyders' name "on the recommendation of Mr. Becker and Mr. Stalnaker and some correspondence that Mr. Stalnaker had from Mr. Lyders at that time". He exhibited various office copies of invoices made out in Lyders' name, said that the practice was to file the original in respondent's general office, a copy in the Yuma office, to send out another copy with the deliveries and to send the final copy "to the customer at the end of the month with a statement". In this case he says that the invoices "were given to Stalnaker for his O. K. and then they were sent to San Francisco". He could not give the address and said that he did not personally mail them but that the bookkeeper was instructed to do so. The bookkeeper did not testify. Appellant positively denies having received any such invoices. Simpkins also testified to talking with appellant, probably in October. It was his impression that this was before the final deliveries were made, though the last delivery shown in the record appears to have been on October 1st, and as we saw, appellant's account would place any such conversation subsequent to October 12th. In that conversation he claims that Lyders told him that in lieu of

Stalnaker he had "arranged with Mr. Fisher to complete the building". Who Fisher was the record does not disclose nor did he testify at the trial. It seems to us that the evidence recited, meager though it is, presented enough of a conflict to preclude us from disturbing the finding of the trial court to the effect that a contractual relation existed between appellant and respondent in consequence of which appellant became bound to pay respondent the reasonable value of the materials delivered. It is, indeed, urged that even if Becker's testimony is accepted in its entirety all that appellant's conversations with him amounted to were preliminary negotiations and not any definitive arrangement, and that such preliminary negotiations do not amount to a meeting of the minds. (Citing 13 C. J. 289, par. 100, and *Fly* v. *Cline,* 49 Cal. App. 414 [193 Pac. 615], *Dillingham* v. *Dahlgren,* 52 Cal. App. 322, 329 [198 Pac. 832], and *Toms* v. *Hellman,* 115 Cal. App. 74 [1 Pac. (2d) 31].) Of the correctness of the principles laid down in these citations there is no question, but the trial court was at liberty to believe that appellant did get a figure on the materials at Yuma, that he did thereafter tell Becker that he had decided to go ahead with the building on the Bard (Imperial County) ranch, and that his man there would do the work; and this, coupled with the inquiry attributed to him by Becker whether it would be satisfactory for his man to do the ordering or get the materials, presented a situation wherein we cannot say that the trial court acted without evidence if it believed that Stalnaker, in thereupon proceeding to order the materials, was invested with at least the ostensible authority to do so. These conclusions obviate the necessity of considering the question of a subsequent ratification or whether appellant's later promise to pay the account was accompanied by a condition that never was fulfilled. So far as the consideration for it was concerned, the circumstance that it was based on what appellant recognized as in some sort a moral obligation, and what was one in fact, would under section 1606 of the Civil Code, amount to a consideration.

In respect of the insurance, the evidence showed that appellant had, without knowing that respondent had taken any out, himself insured the house for $3,500 with another company under a policy containing a warranty that there

was no other insurance carried, that after the loss an appraisement by the insurer had fixed the value of the house at $3,200 and that appellant brought an action to collect the same, which action was still pending at the time the case now before us was tried. The present record does not, of course, show what the outcome of this action was but it is claimed in respondent's brief that appellant obtained judgment against his insurer for the $3,200 and that the judgment has been fully paid and of this there is in appellant's briefs no denial. The record shows that the $2,000 insurance policy taken out by respondent purported to insure "E. Lyders" in that amount against loss or damage to said building by fire but contained also this language: "Loss, if any, on buildings only, subject, however, to all the terms and conditions of this policy, payable to Hayward Lumber Company, Yuma, Ariz. (Mortgage clause attached)", and in addition to that it had attached to it an indorsement reading: "Loss, if any, subject to all the terms and conditions of this policy, is payable to Hayward Lumber Company." Nothing amounting in terms to a mortgage clause was either contained in the policy or indorsed upon it but there was attached to it a further indorsement the body of which, in so far as it need be here noticed, read as follows:

"It is understood that H. N. STALNAKER (hereinafter termed Vendee) has an interest in the within described property by virtue of contract of sale from E. LYDERS (hereinafter termed Vendor).

"If loss under this policy be payable to a mortgagee, trustee or beneficiary under deed of trust, the proceeds of this policy shall be first applied to the payment of such payee's interest, and the balance, if any, subject to all the terms and conditions of this policy, shall be payable to said vendor and/or said vendee in the manner hereinafter provided in paragraphs designated 'First' and 'Second' hereof. If this policy be not payable to a mortgagee, trustee or beneficiary under deed of trust, the proceeds of this policy, subject to all its terms and conditions, shall be payable to said vendor and/or said vendee as follows:

"FIRST: To said Vendor, to an amount not exceeding the balance unpaid, at the time of loss, upon the contract of sale above referred to; and

"SECOND: The balance, if any, to said Vendee.

"Provided always, however, that in no event shall any of the above payments, or the aggregate thereof, exceed the amount for which this policy is written, or the amount for which this company may be liable on any loss thereunder; and provided further, that if at the time of any loss there be other insurance, whether valid or not, upon the within described property, this company shall not be liable under this policy for a greater proportion of any loss on said property, than the amount insured by this policy bears to the entire insurance covering such property, issued to or held by any party or parties having an insurable interest therein as vendor, vendee, mortgagee, trustee or beneficiary under deed of trust."

This policy also contained a stipulation that unless otherwise provided by agreement indorsed upon or added to it, it should be void "if the insured now has or shall procure any other insurance whether valid or not on property covered in whole or in part by this policy". There is no evidence in the record that Stalnaker ever in fact contracted to buy appellant's land. It was after the present action had been commenced that the house burned. Thereupon respondent wired that it held the $2,000 insurance policy and requested appellant to make proof of loss thereunder, to which appellant replied that he could not do so by reason of holding the $3,500 policy wherein he had warranted that the building was not otherwise insured, but suggesting that respondent as the holder of an insurable interest do so, and that the matter be then taken up with the idea of obtaining some equitable adjustment of the loss as between the two insurers. Respondent thereupon made the proof of loss and collected the $2,000 from the American Insurance Company, which, treating itself as, in consequence, subrogated to respondent's rights as against appellant, assigned for collection its assumed interest in the cause of action here sued upon and in the instant case to respondent.

In the circumstances recited appellant invokes the principle laid down in Civil Code, section 1559, that "a contract made expressly for the benefit of a third person, may be enforced by him," and the rule that "one may become a party to an insurance effected in terms applicable to his interest, without previous authority from him, by adopting

it either before or after the loss has taken place", citing *Hooper* v. *Robinson*, 98 U. S. 528 [25 L. Ed 219], *Kleiber: Motor Truck Co.* v. *International Indemnity Co.*, 106 Cal. App. 709, 716 [289 Pac. 865], and *Phoenix Ins. Co.* v. *Hancock*, 123 Cal. 222, 224 [55 Pac. 905], where it is said: "Although defendant had no authority to procure insurance for the administratrix, yet she could have ratified his act—even after the occurrence of a loss."

Appellant further argues that respondent had no insurable interest in the house, that, therefore, had respondent, rather than appellant, been insured in the $2,000 policy the interest would, under section 2551 of the Civil Code, have been void, and that, since under section 2588 of the Civil Code "when the name of a person intended to be insured is specified in a policy, it can be applied only to his own proper interest", respondent had no right to collect anything from the American Insurance Company except as insurance on appellant's interest; that respondent at best appeared in the policy merely as appellant's appointee to receive the money due to appellant as the insured to indemnify him for his loss (citing as illustrative of that situation, *Williams* v. *North German Ins. Co.*, 24 Fed. 625, *American Cereal Co.* v. *Western Assur. Co.*, 148 Fed. 77, and *Woods* v. *Insurance Co. of State of Pennsylvania*, 82 Wash. 563 [144 Pac. 650]); that it follows that the money when collected was appellant's money, for which respondent was bound to account; that, on the other hand, if the American Insurance Company were not under legal obligation to pay the $2,000, then, when it did so, there came into play the rule that "the payment of a debt by a person not legally responsible for it is a satisfaction of the debt" (*Martin* v. *Quinn*, 37 Cal. 55, 58) and that "an obligation which has been extinguished by payment cannot be subsequently transferred" (*Wright* v. *Mix*, 76 Cal. 465 [18 Pac. 645]; *Merner Lumber Co.* v. *Brown*, 218 Cal. 136 [21 Pac. (2d) 590]), that no subrogation can result from a voluntary payment (*Holmes* v. *Hughes*, 125 Cal. App. 290 [14 Pac. (2d) 149]); consequently that no cause of action against appellant has survived, which could have either been assigned or have inured to the benefit of the American Insurance Company, or have formed any proper subject for a reassignment or any assignment at all, for collection or otherwise.

While it is true that a general creditor of one who owns a building has no insurable interest in the building, it is the law that not only has the holder of a mechanic's or materialman's lien thereon, by virtue of such lien an insurable interest therein (26 C. J. 27, and cases cited under note 97), but also that he does not lose his insurance by discontinuing the prosecution of the lien after the building has burned (*Royal Ins. Co.* v. *Stinson,* 103 U. S. 25 [26 L. Ed. 473]). If it be true, as the trial court must necessarily have decided and as we have upheld it in deciding, that Stalnaker had from appellant either the actual or ostensible authority to order the materials that respondent furnished and that undoubtedly went into the burned structure then these were furnished to "a person acting by" appellant's "authority," and we think that regardless of whether the authority was actual or ostensible, either would be sufficient to meet the requirements of section 1183 of the Code of Civil Procedure (*Mammoth Min. Co.* v. *Salt Lake Foundry Co.,* 151 U. S. 447 [14 Sup. Ct. 384, 38 L. Ed. 229], affirming same case in 6 Utah, 351 [23 Pac. 760]), and, therefore, that respondent, upon furnishing the materials, acquired a valid lien on the structure for their value. No proof of the filing in the recorder's office of respondent's claim of lien was offered, possibly because as a result of the burning of the building respondent had at the trial abandoned the first count of its complaint. But on October 15, 1928, the date that the $2,000 policy was issued, the time for filing such claim of lien had not yet expired, so that at that time the lien was alive regardless of what happened to it afterward. At least in taking out the policy, then, respondent had an insurable interest in the structure insured, and the trial court's finding to that effect is sustained by the evidence. But, though respondent had such insurable interest in the house, it must be conceded that the policy does not purport to insure its interest, but does purport only to insure Lyders and that the only mention of respondent either in it or in the indorsements upon it is in the loss payable clauses that we have quoted, and that these clauses mean merely that respondent is made appointee to recover money otherwise payable to appellant. This is the result of the cases to that effect cited by appellant, including a full discussion of such

a situation in *Woods* v. *Insurance Co. of State of Pennsylvania, supra.* Nor would it have changed the situation had a clause "loss, if any, payable to Hayward Lumber & Investment Company, mortgagee, as its interest may appear" been indorsed on the policy, for, as was said in *Delaware Ins. Co.* v. *Greer*, 120 Fed. 916 [57 C. C. A. 188, 61 L. R. A. 137], cited in the Woods case:

"The true construction of the clause 'Loss, if any, payable to —— mortgagee, as his interest may appear,' or of words of similar import, when attached to policies of fire insurance, is, and has been for more than 40 years, that the mortgagee is thereby made the simple appointee of the mortgagor, and that his indemnity is at the risk of the acts and omissions of the latter which would avoid, terminate, or affect the mortgagor's insurance under the original policy." (Citing *American Cereal Co.* v. *Western Assur. Co., supra.*)

█ The "interest" of the mortgagee referred to in such a clause is not his interest in the property insured but the "interest" or amount which the mortgagor has appointed him to collect from the proceeds of the policy. If, then, we are to look for the refutation of appellant's claim to an accounting for the $2,000 policy, it must be found elsewhere than in the contention that in obtaining the insurance in that amount respondent was insuring its own interest in the house. But, for all of that, we are of the opinion that the record does supply such a refutation. █ Appellant has, by the warranty to which he became a party to his own $3,500 policy, represented to his insurer that he held no other insurance than that issued by it; and reciprocally, as we saw, the $2,000 policy is, by its terms, void if other insurance is carried. In these circumstances the insistence, in his action against his own insurer, on the collection from it of the amount of the loss must be held to be a waiver of any claim to anything from the proceeds of the $2,000 policy. Certainly he could not in the circumstances have collected any part of the $2,000 from the American Insurance Company direct. What he seeks to do is indirectly to accomplish that result by compelling respondent to account to him for *its* collection of that amount. To do so, whether by way of an offset in the action against him, or, more directly, by his own counterclaim in the pres-

ent action, he is compelled to rely on the principle of money had and received. ■ An action for money had and received, though technically an action at law, proceeds upon equitable principles. In *Fontaine* v. *Lacassie,* 36 Cal. App. 175, 178 [171 Pac. 812], the court quotes Lord Mansfield in *Moses* v. *MacFerlan,* 2 Burr. 1005, as follows: " 'If the defendant be under an obligation, from the ties of natural justice, to refund, the law implies a debt, and gives this action, founded in the equity of the plaintiff's case, as it were upon a contract. . . . This kind of equitable action, to recover back money which ought not in justice to be kept, is very beneficial, and therefore much encouraged. It lies only for money which, *ex aequo et bono,* the defendant ought to refund. . . . In one word, the gist of the action is that the defendant upon the circumstances of the case is obliged by the ties of natural justice and equity to refund the money.' " (See, also, *Spitzer* v. *City of Oakland,* 32 Cal. App. 748 [163 Pac. 1044].) Appellant here is in the peculiar position of having to rely on a doctrine conceived in abhorrence of unjust enrichment at another's expense in order to obtain double insurance for a single loss. The law will hardly stultify itself by countenancing that sort of a perversion. Appellant's communication to respondent refusing to make proof of loss under the $2,000 policy may well be held to have effected a waiver of any claim to benefit from the proceeds of that policy notwithstanding the suggestion therein that respondent make such proof. But whether the communication had in itself any such effect or not, it took on that complexion when followed by appellant's action on his $3,500 policy, with respect to which there is nothing in the record to show that he abated anything in consequence of the $2,000 policy. With the commencement of that action, if not before, the waiver must be holden to have become complete. In the circumstances the attempted ratification in the supplemental answer and counterclaim of respondent's action in taking out the $2,000 policy must be holden ineffectual.

■ If it be still urged that, notwithstanding these considerations, appellant's debt to respondent, having been paid by the American Insurance Company, is forever dead and incapable of revivor, the answer is furnished by appellant's own argument already dealt with. There is nothing in the

record to indicate that the American Insurance Company paid the $2,000 voluntarily or otherwise than under the impression that it was legally bound to do so under the policy that it issued. The record does not show what knowledge it had or did not have about the $3,500 policy. It is not the usual course of business for insurers to voluntarily make payments that they do not believe themselves legally bound to make and we cannot presume that this was done in this instance. Respondent's collection of the $2,000 was in contemplation of law, not for its own account but for appellant's account and appellant turns out to have had no right to it. Had he gotten any part of the money he would, upon the doctrine of money had and received to the use of the American Insurance Company, have been bound at the latter's suit to return it. By the same token the law will compel him to forego any credit, to which, if he had any right to the money, he would have been entitled by reason of respondent's collection of it, provided his deprivation of the credit inures to the benefit of the American Insurance Company, to whom the money rightfully belongs. The record shows that arrangements have been effected whereby it will so inure. In these circumstances the insurance complication ought not to be held a bar to plaintiff's recovery.

The judgment is affirmed.

Barnard, P. J., and Marks, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 1, 1934, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 30, 1934.